No. 25-20386

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

TRINIDAD CUTSHALL,
Plaintiff - Appellee,

V.

DONALD DILLOW, SERGEANT, IN HIS INDIVIDUAL CAPACITY;
NAHUEL FAIURA, DEPUTY, IN HIS INDIVIDUAL CAPACITY; TODD
KLOSTERMAN, SERGEANT, IN HIS INDIVIDUAL CAPACITY; N. POIRIER,
DEPUTY, IN HIS INDIVIDUAL CAPACITY; D.R. CALHOUN, LIEUTENANT,
IN HIS INDIVIDUAL CAPACITY; M.A. CARRIZALES, SERGEANT, IN HIS
INDIVIDUAL CAPACITY; R.W. HOLLEY, DEPUTY, IN HIS INDIVIDUAL
CAPACITY; C. MARSHALL, DEPUTY, IN HIS INDIVIDUAL CAPACITY; P.
BATTON, DEPUTY, IN HIS INDIVIDUAL CAPACITY,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas
Houston Division
District Court No. 4:25-CV-2899

_____

BRIEF OF APPELLANTS DONALD DILLOW, SERGEANT, IN HIS
INDIVIDUAL CAPACITY; NAHUEL FAIURA, DEPUTY, IN HIS
INDIVIDUAL CAPACITY; TODD KLOSTERMAN, SERGEANT,
IN HIS INDIVIDUAL CAPACITY; N. POIRIER, DEPUTY, IN
HIS INDIVIDUAL CAPACITY

_____

RICHARD KUNIANSKY
Law Offices of Richard Kuniansky
State Bar No. 11762640
440 Louisiana, Suite 1440
Houston, Texas 77002
Telephone:  (713) 622-8333
rkuniansky@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of 5th Cir. Rule 28.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  Mr. Garrett Lee Gibbins, Houston, TX, Attorney for Trinidad Cutshall.

2.  Mr. Francis Joseph Ford of Harris County Attorney's Office, Houston, TX, Attorney for Harris County, Texas.

3.  Mr. David Adler, Houston, TX, Attorney for C. Marshall, R.W. Holley, D.R. Calhoun, M.A. Carrizales and P. Batton.

4.  Mr. Richard Kuniansky, Houston, TX, Attorney  Donald Dillow, Nahuel Faiura, Todd Klosternan and N. Poirier.


    /s/ Richard Kuniansky
RICHARD KUNIANSKY, ATTORNEY FOR DEFENDANT-APPELLANTS DONALD DILLOW, SERGEANT, IN HIS INDIVIDUAL CAPACITY; NAHUEL FAIURA, DEPUTY, IN HIS INDIVIDUAL CAPACITY; TODD KLOSTERMAN, SERGEANT, IN HIS INDIVIDUAL CAPACITY; N. POIRIER, DEPUTY, IN HIS INDIVIDUAL CAPACITY

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellants DONALD DILLOW, SERGEANT, IN HIS INDIVIDUAL CAPACITY; NAHUEL FAIURA, DEPUTY, IN HIS INDIVIDUAL CAPACITY; TODD KLOSTERMAN, SERGEANT, IN HIS INDIVIDUAL CAPACITY; N. POIRIER, DEPUTY, IN HIS INDIVIDUAL CAPACITY request oral argument in this case and believe it would be beneficial to the Court based on the number of individual defendants and different facts that apply to each.

## TABLE OF CONTENTS AND AUTHORITIES

Page

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . ii

CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II. Procedural History. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    ISSUE 1: Whether the district court erred in holding that Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan  and Deputy N.Poirier were not entitled to qualified immunity. .. . . . . . . . . . . . . . . . . . 16

    I. Standard of Review .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II. Argument. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A. Qualified Immunity .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B. Excessive Force. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        C. Bystander Liability. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34+

<u>AUTHORITIES</u>

Page

<u>CASES</u>

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987).. . . . . . . . . . . . . . . . . . . . . .  19

*Anderson  v. Estrada*, 140 F.4th 634 (5th Cir. 2025) (5th Cir. 2024).. . . . . . .  *passim*

*Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016). . . . . . . . . . . . . . . . .  20

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949). . . . . . . . . . . . . .  17

*Ayala v. Aransas County*, 2016 W.L. 6627867 (S.D. Tx. 2016), aff'd. 777 F.App'x.
100 (5th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

*Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . .  20

*Bass v. Jackson*, 776 F.Supp. 3d 535 (E.D.Tx. 2025). . . . . . . . . . . . . . . . . . . . .  15

*Beaty v. Brennan*, 22 F. 4th 577, 582 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (1974). . . . . . .  17

*Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).. . . . . . . . . . . . .  21

*District of Columbia  v. Wesby*, 138 S.Ct. 577, 589 (2018). . . . . . . . . . . . . . . .  17-20

*Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).. . . . . . . . . . . . . . . . . . . . .  20

*Galvan v. City of San Antonio*, 435 Fed. Appx. 309, 311 (5th Cir. 2010) . . . . . . . 26

*Graham v. United States*, 490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . .passim

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021). . . . . . . . . . . 17

*Joseph on Behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345
(5th Cir. 2020).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 30

*Kitchen v. Dallas County*, 759 F.3d 468, 481 (5th Cir. 2014) . . . . . . . . . . . . 16, 30

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). . . . . . . . . . . . . . . . . . 20

*Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam).. . . . . . . . . . . . . . 19

*Perdans v. City of League City*, 765 F.Supp.3d 613 (S.D. Tex. 2025). . . . . . 15, 28

*Plumhoff v. Pickard*, 571 U.S. 765, 779 (2014).. . . . . . . . . . . . . . . . . . . . . . . . . 19

*Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) . . . . . . . . . . . 26-27

*Ramirez v. Escajeda*, 44 F.4th 287 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . 32

*Reichle v. Howards*, 566 U.S. 658, 664 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Saucier v. Katz*, 533 U.S. 194, 202 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Trammel v. Fruge*, 868 F.3d 322 (5th Cir. 2017).. . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Harrimon*, 568 F.3d 531 (5th Cir. 2009).. . . . . . . . . . . . . . . . . 23

*United States v. St. Luke's Episcopal Hospital*, 355 F.3d 376 (5th Cir. 2004). . . . 13

*Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . 16-17

## STATUTES AND RULES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Rule 8(a) F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Rule 10(c) F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Rule 12(b)(6) F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 14, 20

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment. *Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025). Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N.Poirier timely appealed by filing their notice of appeal within 30 days of the district court's order of September 4, 2025.[1]

---

[1] ROA.1232.

## <u>STATEMENT OF THE ISSUE</u>

Whether the district court erred in holding that each individual officer was not entitled to qualified immunity.

## STATEMENT OF THE CASE

## I. FACTUAL BACKGROUND

Determining whether an officer is entitled to qualified immunity is a fact intensive determination requiring careful attention to the facts and circumstances of each particular case. *Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025). Therefore, the facts in this case will be set forth in detail. Normally at the 12(b)(6) motion to dismiss stage, there may be factual disputes. However, in this case, it is undisputed that the Plaintiff was completely incoherent during the events in question, and has derived all of his facts from the Harris County Incident Report, which is attached to his Complaint as Exhibit B. Defendants rely upon the identical facts. Exhibits attached to a complaint are part of the complaint "for all purposes". Fed.R.Civ.P. 10(c). Therefore, the exhibits to the complaint may be considered in a Rule 12(b)(6) motion. *United States v. St. Luke's Episcopal Hospital*, 355 F.3d 376 (5th Cir. 2004).

Undersigned counsel has divided the facts into three sections: (1) from when patrol officers first observed a truck traveling on a major Houston interstate at 5 MPH until, through the use of spikes, they were able to get the truck to a stop; their initial efforts to try to get the driver to exit the truck through negotiation; and when they were unable to get the driver to exit the truck through negotiation and called the Special Weapons and Tactical ("SWAT") team; (2) the second part of the factual basis picks

up from where the SWAT team arrived on the scene until they were able to forcefully remove the driver from the cab of the truck. Undersigned counsel presently[2] represents four of these team members: Sergeant Donald Dillow ("Dillow"), Deputy Nahuel Faiura, ("Faiura"), Sergeant Todd Klosternan ("Klosterman") and Deputy N.Poirier ("Poirier"); and (3) since whether an individual officer is entitled to qualified immunity is fact specific to each individual officer, the third section of the factual background will set forth each of the individual officers, and the facts specific to that officer.

(1)     PATROL OFFICERS

On December 27, 2023, H.P.D. Sargent Carrizales ("Cazzizales") observed a tractor trailer driving approximately 5 m.p.h. on Interstate 10. Carizales stayed behind the truck, using his horn and sirens to get the driver to stop. The driver refused to pull over. Carrizales believed the driver was either experiencing a medical emergency or under the influence of narcotics or alcohol. Carrizales called for assistance and several patrol cars arrived. The patrol officers attempted to get the driver's attention, by flanking him and by using the public announcement system, all to no avail. Spikes

---

[2] It is anticipated that once undersigned counsel's attorney's representation contract is approved by the Harris County Commissioners Court, he will represent four additional SWAT team members: Deputy Kenneth Sandor, Deputy E. Hernandez, Deputy J. Luna and Deputy J. Cogburn.

were then deployed to stop the truck. The driver went over three sets of spikes, but still continued to drive until several tires deflated and he veered into the inside shoulder, where his truck was disabled. ROA.693. The pursuit lasted approximately 42 minutes. ROA.655. Several commands were made over the PA system for the driver to exit his truck. The driver still refused to exit the truck. Even though the truck was disabled, the driver was still actively trying to drive the truck, accelerating and shifting gears as if he was still driving. ROA.693. The driver was showing no signs acknowledging police were on the scene and trying to communicate with him. ROA.696. It was unknown if the driver had any weapons. Lieutenant Calhoun then authorized Deputy Batton to launch non-lethal 40 mm rounds at the truck to get the driver's attention or get him to exit the vehicle. Four rounds were discharged to the front passenger window, having no effect on the driver. ROA.696.

Harris County K9 Deputy Robinson made several announcements over his P.A. to the driver that "Mr. Cutshall, this is Deputy Robinson with the Harris County Sheriff's Office K9 division, shut off the truck, open the door, come out with nothing in your hands. If you do not comply, we will force entry into the truck and the dog will bite you." The K9 officer had authority to deploy the dog because (a) the driver was wanted for the offense of evading arrest; (b) the driver had not been searched for

weapons; and (c) the driver posed a risk of flight on foot in a highly congested area. Nevertheless, the K9 officer did not deploy his dog. ROA.662.

(2)    SWAT

When Harris County patrol officers were unable to remove Plaintiff from his truck, they called the SWAT team. SWAT arrived with a Ballistic Engineered Armored Response vehicle ("BEAR") that had a Long Range Acoustical device ("LRAT") and a Rook. Rook is not an acronym but stands for a chess piece and its strategic value. The Rook is capable of tearing off parts of a truck without harming the driver or officers.

The SWAT team parked the BEAR device in front of the truck to completely immobilize the truck. They then attempted to extract the driver, starting with minimally invasive techniques and then ascending with more invasive techniques when their efforts were fruitless.

In the beginning, a crises negotiator attempted to talk the driver out of the truck in both English and Spanish. ROA.703. Loud and clear announcements were made to exit the truck. ROA.664. He was advised there was an active warrant for his arrest and to exit the vehicle. ROA.672. The trucking company tried to call him on his cell phone multiple times, but he did not answer. ROA.673. Deputy Eldreth called the driver's cell phone 71 times, but he did not answer. ROA.679. The next step was to deploy a

chemical irritant into the truck that would ordinarily make one want to exit the vehicle. Two ferret rounds were fired at the front windshield. Only one round breached the front windshield. ROA.665. This had no effect whatsoever on the driver, who still appeared as if he thought he was driving the truck. ROA.703.

SWAT next employed the Rook. The Rook does not injure the driver. Rather, its purpose is to create openings in the cab of the truck which would permit the driver to exit, or alternatively, for SWAT officers to deploy additional chemicals into the cab, and if that was not successful, permit SWAT officers to enter the cab and extract the driver.

The Rook breached the rear window of the cab, but the driver still did not comply with commands. More chemical agents were hand delivered into the interior of the cab by SWAT officers. ROA.676. This seemed to have minimal effect on the driver. ROA.689. The Rook then breached the passenger side sleeper window and a CS tri-chamber was deployed. ROA.689. The CS tri-chamber emits a large concentration of CS and was intended to saturate the cab and cause the driver to exit. ROA.701. It had some effect because the driver was observed coughing, but he still would not exit the truck. ROA.701. This type of minimal reaction is often observed with mentally ill suspects or suspects under the influence of alcohol or drugs. ROA.690.

The Rook then removed the passenger side door. The plan was to use a small team, a canine, and non-lethal force to remove the driver. ROA.690. The small team moved into position and the driver was observed to have both hands in his lap, covered by a sweater. As a result, it was unknown whether he was armed. K9 Deputy Marshall deployed his dog, who is trained to apprehend suspects and pull them from a vehicle. The canine made contact with the driver's right forearm, just above the wrist. Deputy Marshall attempted to pull the driver out, but the driver braced himself and used his legs to lock himself in the driver's seat. Deputy Marshall then removed his canine, and observed the driver struggle with other SWAT members. ROA.671.

Deputy Poirier deployed 3 foam rounds into the cab of the truck. Two of the rounds struck the driver. The driver still refused to exit the truck. ROA.676. Deputy Poirier entered the cab of the truck through the rear cab window which had been breached by the Rook. He observed the driver resisting the K9, K9 officer and other team members. He observed what appeared to be several pocket knives in the driver's front pocket. Due to the driver's level of resistance, Deputy Poirier struck the driver in his head and face. The driver took hold of Deputy Poirier's arm and would not let go. ROA.676. Deputy Poirier struck the driver several more times to free himself.

At the same time, Deputy Faiura, Sgt. Klosterman, Sgt. Dillow and Deputy Cogburn were attempting to pull the driver from the cab. Faiura handed off his rifle

to another Deputy and grabbed the driver by his shirt. The driver was resisting Deputy Faiura, Deputy Poirier and Deputy Cogburn, ROA.684.

Deputy Cogburn entered the cab through the passenger door and observed the driver grabbing deputies. He observed the driver place his hands on several pocket knives that were clipped to his pants pocket. When the driver was reaching for a knife, Deputy Cogburn grabbed his hand and squeezed it to gain control. He then removed the knives while the other Deputies held his arms. The driver continued to fight and resist. Eventually, Officer Cogburn was able to grab a hold of the rear of the driver's waistline and with the help of the other Deputies, remove him from the cab. Even after being removed from the cab, the driver continued to fight with SWAT Officers and attempted to bite Deputy Cogburn and other SWAT officers. ROA.690.

Sgt. Klosterman was another SWAT team member involved in pulling the driver from the cab. He observed the driver grab another team member (Deputy Poirier). When he would not release his arm, Sgt. Klosterman delivered three hammer fist strikes to the driver's face, which were effective because he released Poirier's arm. However, the driver then grabbed Sgt. Klosterman's arm. Nevertheless, no further strikes were delivered. Sgt. Klosterman observed the driver anchor his legs to the dash and driver's seat, making it extremely difficult to remove him. ROA.702.

Sgt. Dillow saw the Deputies attempting to remove the driver from the cab. He

was resisting and wedging his legs and trying to hold on to the truck. Sgt. Dillow

helped to pull him out. ROA.704. The driver landed on his chest and face where

broken glass from the truck caused his lacerations. He continued to resist arrest while

on the ground. ROA.666. He moved his head back and forth over the gravel that had

broken glass. ROA.671. He attempted to bite Deputy Cogburn and other Deputies.

ROA.690, 710. He also attempted to grab his knives while struggling on the ground

but was thwarted. ROA.685.

(3)    FACTS SPECIFIC TO INDIVIDUAL OFFICERS

A.    FACTS SPECIFIC TO SGT. DILLOW

The Plaintiff's complaint makes no specific allegations against Dillow.

However, assuming *arguendo* that a 59 page incident/investigation report suffices to

allege two causes of action against him, excessive force and bystander liability, the

incident investigation report establishes that when he arrived on the scene the 18

wheeler was disabled, yet nevertheless, the driver continued pressing the accelerator.

Dillow observed the disabled 18 wheeler. The driver was revving the engine. The tires

were spinning and smoking and partially off the wheel rim. The driver was staring

straight ahead, oblivious to police presence, and it appeared that he thought he was

driving. When Deputies were finally able to pulled the driver from the truck,  Dillow

placed his knee near the lower portion of the driver's back to stop him from trying to

get away and helped handcuff him.

B.    FACTS SPECIFIC TO DEPUTY FAIURA

The Plaintiff's complaint makes no specific allegations against SWAT Deputy Faiura. However, assuming *arguendo* that a 59 page incident/investigation report suffices to allege two causes of action against him, excessive force and bystander liability, the incident investigation report establishes that when he arrived on the scene the 18 wheeler was disabled, yet nevertheless, the driver continued pressing the accelerator. Faiura observed Sgt. Dillow approach the driver's side of the truck by himself, so Faiura proceeded to assist him. Faiura observed Deputy Poirier fighting with the driver inside the cab and observed the suspect grab Deputy Poirier. Faiura handed off his rifle, reached into the cab, and grabbed the driver and pulled him out of the cab. While on the ground, Faiura placed his knee on the driver's shoulder blade to keep him from moving and handcuffed him. The entire time, the driver was reaching for his pants pockets which held pocket knives.  ROA.684-685.

C.    FACTS SPECIFIC TO SGT. KLOSTERMAN

The Plaintiff's complaint makes no specific allegations against Klosterman. However, assuming *arguendo* that a 59 page incident/investigation report suffices to allege two causes of action against him, excessive force and bystander liability, the incident investigation report establishes that when he arrived on the scene the 18 wheeler was disabled, yet nevertheless, the driver continued pressing the accelerator. Klosterman observed the driver attempting to drive a disabled truck. The wheels were

spinning, but the truck was stationary. The driver would rev the engine. Sgt. Klosterman and another SWAT member (Poirier) entered the truck and attempted to forcefully remove the driver. The driver grabbed onto various parts of the interior of the truck to keep from being pulled out. The driver grabbed the arm of Deputy Poirier who delivered first strikes to try to stop the driver from injuring him. The driver did not release his grip. Sgt. Klosterman delivered 3 hammer strikes to the face of the driver to get him to release Deputy Poirier. The driver then grabbed Sgt. Klosterman's arm. Notwithstanding his grip on Sgt. Klosterman's arm, Sgt. Klosterman did not deliver any further strikes. The driver was eventually pulled from the truck. ROA.701-702, 711.

D.     FACTS SPECIFIC TO DEPUTY POIRIER

The Plaintiff's complaint makes no specific allegations against Poirier. However, assuming *arguendo* that a 59 page incident/investigation report suffices to allege two causes of action against him, excessive force and bystander liability, the incident investigation report establishes that when he arrived on the scene the 18 wheeler was disabled, yet nevertheless, the driver continued pressing the accelerator. Poirier heard loud clear commands from the long range acoustical devise instructing the driver to exit the vehicle with nothing in his hands. These commands were in English and Spanish. When the driver did not respond, chemical agents were

introduced into the vehicle. After the Rook created an opening, more chemical agents were introduced. The driver still refused to exit the vehicle. Poirier deployed 3 foam rounds into the cab of the truck. Although two hit the driver, he still refused to exit the truck. Poirier then observed a K-9 and K-9 handler enter the cab.  Poirier entered the cab to provide support to the K-9 handler. Poirier observed the driver resist the K-9 handler and team members. Poirier observed the driver curve his legs under the driver's seat to prevent himself from being removed. Poirier also observed what appeared to be pocket knives in the driver's pocket. Due to the confined space and the driver's level of resistance, Poirier delivered several closed fist strikes to the driver's head and face. The driver grabbed Poirier's hand and began to pull him closer. Poirier instructed the driver to let go of him, but the driver refused. Poirier delivered several more closed fist strikes to the driver's face to free himself. ROA.675-676.

II.     PROCEDURAL HISTORY

On June 22, 2025, Plaintiff Trinidad Cutshall filed a Complaint against Harris County, Texas  and 13 individual officers alleging the individual officers used excessive force in violation of 42 U.S.C. § 1983. ROA.9.  The Plaintiff also alleges bystander liability against the individual officers for failing to intervene and that Harris County was liable for practices and customs allowing for the use of excessive force and failure to properly train or supervise the officers who allegedly used

excessive force.

Undersigned counsel represents individual officers  Sergeant Donald Dillow ("Dillow"), Deputy Nahuel Faiura, ("Faiura"), Sergeant Todd Klosternan ("Klosterman") and Deputy N.Poirier ("Poirier") in this appeal. [3]

On August 28, 2025, Defendant Officers Dillow, Faiura, Klosterman and Poirier filed 12(b)(6) motions to dismiss raising the defense of qualified immunity. ROA.939-1018.  These motions were denied by the Honorable David Hittner on September 4, 2025. ROA.1232.

## SUMMARY OF THE ARGUMENT

Regarding the allegation of excessive force, each  of the Defendant Officers is entitled to qualified immunity. The force used by each individual officer was clearly objectively reasonable. Moreover, none of the officers violated a clearly established right in the use of their force.

Regarding the allegation of bystander liability, Federal Rule of Civil Procedure 8(a) mandates that a pleading must contain a "short and plain statement of the claim

---

[3] Defendant Officers Deputy Kenneth Sandor, Deputy E. Hernandez, Deputy Deputy J. Luna and Deputy J. Cogburn were not served with the Complaint until on or about September 5, 2025. Undersigned counsel intends to file a 12(b)(6) motion to dismiss on behalf of these recently added Defendants by October 22, 2025. Since they are all SWAT members with similar defenses, it is anticipated that Judge Hittner will deny these motions. Assuming their 12(b)(6) motions are denied, these four additional Defendants will be filing an appeal virtually identical to this brief with the exception of adding facts unique to each of the individual defendants, and the appeals should be consolidated.

showing that the pleader is entitled to relief." In the context of bystander liability under § 1983, the Plaintiff must allege specific facts demonstrating that the defendant officer: (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. See, e.g. *Bass v. Jackson*, 776 F.Supp. 3d 535 (E.D.Tx. 2025) and *Perdans v. City of League City*, 765 F.Supp.3d 613 (S.D. Tex. 2025). In the instant case, none of these three requirements were alleged. Moreover, all 13 officers, whether patrol or SWAT, were all lumped together for bystander liability. Clearly, an officer could not be liable by bystander liability for his own conduct, but the complaint makes no effort to draw this distinction. Based on the foregoing, the bystander liability claim should be dismissed for failure to state a claim. However, assuming *arguendo* the complaint sufficiently pleads bystander liability, bystander liability is derivative of the use of excessive force. The elements of bystander liability are that the officer: (1) knows that a fellow officer is violating an individual's constitutional rights (the use of excessive force); (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *See e.g.*, *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) and *Kitchen v. Dallas County*, 759 F.3d 468, 481 (5th Cir. 2014). A classic example of bystander liability is *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995). There, an officer stood by, laughed and offered encouragement as a fellow officer without provocation slammed

Hale against a car, repeatedly tried to slam his head into a car and rammed his fist into Hale's testicles. *Id.* at 919. In this case, there was no excessive force utilized. However, assuming arguendo excessive force was used, and further assuming that the constitutional right was clearly established, each officer is nevertheless entitled to qualified immunity for bystander liability. Importantly, there are two layers of protection for an officer to be liable for bystander liability. First, the officer alleged to have used excessive force must have not only used excessive force, but that force had to violate a clearly established constitutional right and the officer's conduct had to be unreasonable. The second layer of protection, at least in the Fifth Circuit, is that the plaintiff in pursuing a § 1983 claim based on bystander liability has to show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing the acting officer was violating a clearly established constitutional right.[4]

## ARGUMENT AND AUTHORITIES

**ISSUE**: **Whether the district court erred in holding that Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N. Poirier were not entitled to qualified immunity.**

---

[4] *Joseph on Behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).

I. STANDARD OF REVIEW

This court reviews *de novo* the district court's denial of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim  to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "But this court does not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quotation marks and citations omitted).

II.    ARGUMENT

A.    Qualified Immunity

Governmental officials are protected from suit and liability by qualified immunity unless their alleged conduct: (1) violated a Constitutional or statutory right; and (2) the illegality of the alleged conduct was clearly established at the time.[5]  The phrase "clearly established" means that, at the time of the official's

---

[5] *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018).

conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.[6]  Existing law must have placed the constitutionality of the official's conduct "beyond debate."[7]  This demanding standard means that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[8]  To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.[9]  It is not enough that the rule is suggested by then-existing precedent.[10]  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.[11]  Otherwise, the rule is not one that "every reasonable official would know."[12]

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.[13]  The

---

[6]  *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[7]  *Id.; al-Kidd*, 563 U.S. at 741.

[8]  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[9]  *Id*.

[10]  *Id*. at 590.

[11]  *Id*.; see *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

[12]  *Id.*

[13]  *Id.*

rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[14]  Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."[15]  A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."[16] The specificity of the rule is "especially important in the Fourth Amendment context."[17]

Qualified immunity is overcome only if, at the time and under the circumstances of the challenged conduct, all reasonable officers would have realized the conduct was prohibited by the federal law on which the suit is founded.[18]  The question is whether a reasonable officer could have believed that the actions of the defendant officer were lawful in light of clearly established law and the information the officer possessed at the time.[19] If reasonable officers could

---

[14] *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[15] *Id*. (quoting *Plumhoff v. Pickard*, 571 U.S. 765, 779 (2014)).

[16] *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

[17] *Id*. (citing *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)).

[18] *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

[19] *Anderson*, 483 U.S. at 641.

differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity.[20] The legal principle in question must clearly prohibit the specific conduct of the official in the particular circumstances that were confronting the official.[21]

Qualified immunity may be raised in a 12(b)(6) motion to dismiss. *Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016). Qualified immunity recognizes that government officials may "make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

B.     Excessive Force

A very recent Fifth Circuit case addresses both of these causes of action. In a

---

[20] *Malley,* 475 U.S. at 341.

[21] **Wesby**, 138 S.Ct. at 590.

case almost exactly on point, the Fifth Circuit reversed the Honorable Alfred H. Bennett, who had denied the officers' 12(b)(6) motions asserting qualified immunity as to both the alleged use of excessive force and as to bystander liability. *See Anderson v. Estrada, supra*.

In *Anderson v. Estrada*, *supra*, the driver Anderson was involved in a minor one car accident. He admitted to being on "Sherm", the street name for PCP. The officers were arresting him for DUI. Although he was handcuffed, and half inside the patrol car, he refused to get all the way in. One of the officers tried to push Anderson into the patrol car "but Anderson prevented this by stiffening his legs and hooking his feet under the door." *Id*. at 640.  The officers negotiated with him for ten minutes[22] before drive stun tasing him. The officers drove Anderson to the Joint Processing Center. When they arrived, he was unresponsive. Emergency medical services attempted to revive him to no avail. He was transported to a hospital and pronounced dead.

The Fifth Circuit held that:

An officer "is entitled to qualified immunity at the motion-to-dismiss stage unless the plaintiffs have alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Harmon*, 16 F.4th at 1163 (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L.Ed.2d 565 (2009)). We are "permitted to exercise [our] sound discretion in deciding which of the two

---

[22] 140 F.4th at 640.

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818, *overruling in part Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).

*Id*. at 642.

XXXXX

"The Fourth Amendment creates a 'right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.' " *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

Determining whether the force used was clearly excessive and clearly unreasonable "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L.Ed.2d 416 (2015).

*Id*. at 642-43.

Applying the Graham factors to this case, the "crime at issue" was serious. The driver was being arrested for felony evading arrest. Fleeing by vehicle is considered such a serious offense that it is a predicate offense for an armed career offender. See

*United States v. Harrimon*, 568 F.3d 531 (5th Cir. 2009). "Fleeing by vehicle is purposeful, violent and aggressive ... fleeing by vehicle requires disregarding an officer's lawful order, which is a clear challenge to the officer's authority and typically initiates pursuit. (cite omitted). Taking flight causes the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit." 568 F.3d at 534-35. Turning to the second Graham factor, Cutshall posed an immediate risk to the officers' safety. He was "capable of and evinced erratic behavior". "That is enough to establish a threat because any of the officers could be injured by [Anderson's] kicking, thrashing and throwing himself around. *Anderson v. Estrada, supra* at 644. In addition, and very importantly, the arestee in this case had his hands concealed, and was armed with pocket knives, which he reached for. ROA.690.

The third *Graham* factor concerns the degree to which an arrestee resists the officer's mission or objective. While the second *Graham* factor examines the threat the arrestee poses to law enforcement, the third considers the degree of the arrestee's resistance.

> Under these precepts, the video shows that Anderson actively resisted the officers in this case. Anderson kicked at them when attempting to hook his feet under the SUV door, thrashed as the officers struggled to secure him inside the SUV, used his weight to make the officers' task more difficult, and failed to comply with countless orders by the officers to stop resisting and to sit in the vehicle with his legs inside. Anderson's actions, which

frustrated for a lengthy period the officers' attempts to secure him inside the SUV, constituted active resistance.

*Id.* at 646-47

The Court in *Anderson v. Estrada, supra,* concluded in weighing the Graham factors that the officers actions did not violate Anderson's Fourth Amendment rights. *Id*. at 647. The Court also observed that the officers' "measured and ascending actions were proportionate to the escalating situation." No force was used for the first hour. Only after the officers realized the futility of their approach did the officer pull out his taser. *Id.* at 647-48.

In this case, as in the *Anderson* case, the officers used measured and ascending actions that were proportional to the escalating situation. The following actions were taken in escalating order:

(A)   Patrol Officers

•   trying for 42 minutes to get the driver to pull over before spikes were employed. ROA.655.

•   negotiating with the driver ROA.693.

•   threatening to sic a police dog on the driver, but not doing so. ROA.662.

(B)   SWAT Team

•   Crises Negotiator attempted to talk the driver out of the truck in Spanish and English. ROA.703.

- calling the driver numerous times on his cell phone, but the driver failed to answer. ROA.653

- firing a chemical irritant into the truck in an effort to get the driver to exit. ROA.665, 703.

- employing a "Rook" to create openings in the truck.676; 681.

- introducing a stronger chemical agent in an effort to get the driver to exit the truck. ROA.703.

- employing a canine to try and pull the driver from the cab. When this was unsuccessful, the handler called the dog off. ROA.653.

- deploying 3 foam rounds into the cab of the truck, 2 of which struck the driver. ROA.676.

- finally, entering the cab of the truck to physically pull the driver out. Although several strikes were thrown to subdue an armed resisting suspect, no batons, tasers or other instruments were used. ROA.684, 690, 702.

The officers should be commended for exercising constraint, using ascending steps only when necessary and extracting an armed and violent suspect from the cab of the truck, only using that degree of force necessary to extract the driver.

One thing was crystal clear about the situation in this case. Mr. Cutshall was not getting out of the cab of that truck "come Hell or high water". Furthermore, the

-25-

officers could not simply walk away and let an incoherent suspect accused of felony evading arrest in the cab of his truck on a major Houston interstate, spinning the tires of his 18 wheeler as if he was still driving. He was a danger to both himself and others. The officers' actions were not only reasonable but commendable.

"The other two factors - the 'severity of the crime at issue' and the 'immediate threat to the safety of the officers or others' are less salient." *Beaty v. Brennan, supra* at 582. Moreover, officers may use "measured and ascending" actions that correspond to an arrestee's "escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) citing *Galvan v. City of San Antonio*, 435 Fed. Appx. 309, 311 (5th Cir. 2010) (explaining that the use of force was reasonable when it involved "measured and ascending responses to a Plaintiff's noncompliance").

A District Court faced almost identical facts in *Ayala v. Aransas County*, 2016 W.L. 6627867 (S.D. Tx. 2016), aff'd. 777 F.App'x. 100 (5th Cir. 2019). There, the deputies instructed Ayala to get in the vehicle at least 14 times. As the officers attempted to place him in the vehicle, he kicked his legs to prevent their efforts. One of the officers went to the opposite side of the vehicle and attempted to pull Ayala into the back seat. After repeated commands and a warning, one of the officers drive stunned Ayala with a taser. Judge Nelva Gonzales Ramos ruled the officers were

entitled to qualified immunity, stating:

> [I]t is undisputed that Ayala resisted Ciarletta and Campbell's efforts to place him in the squad car. The audio recording captured the deputies instructing Ayala to get in the car at least fourteen times and warning him about being tased.
>
> The Court finds that Ciarletta's use of a taser was objectively reasonable in light of the *Graham* factors. Ayala was actively and persistently resisting the deputies' attempts to place him in the vehicle, although they had given him clear instructions and warnings. And Ciarletta applied the drive stun for only a few seconds—just long enough to secure Ayala's compliance. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that an officer's quick application of a drive stun in order to subdue a noncompliant arrestee, after giving multiple verbal commands, was reasonable); *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016) (multiple tasings were reasonable where handcuffed arrestee continued resisting and kicking); *Ceasar v. City of Eunice*, 642 Fed. Appx. 387, 389 (5th Cir. 2016) (multiple tasings were reasonable where arrestee actively resisted throughout the course of his arrest and booking); *see also Carrol v. Ellington*, 800 F.3d 154, 174–75 (5th Cir. 2015) (an officer's use of a taser after an arrestee refused to get on the ground did not violate clearly established law). Because Ayala has failed to show any evidence that Ciarletta's use of a taser was excessive or unreasonable under the circumstances, he has failed to show a constitutional violation and Ciarletta is entitled to summary judgment based on qualified immunity. The Court GRANTS Defendants' motion with respect to Ayala's excessive force claim premised on Ciarletta's use of a taser.

In *Poole v. City of Shreveport, supra*, it was undisputed that Officer Stalnaker repeatedly commanded Poole to give up his arm, and Poole did not do so. *Id*. at 629. Officer Creighton gave Poole verbal commands and attempted to grab his arm before resorting to a taser. The Fifth Circuit, in holding the officers were entitled to qualified immunity, stated "[v]iewed objectively, Stalnaker and Creighton responded with

'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance." *Id*. "Because Poole has failed to show that Creighton's and Stalnaker's use of force was objectively unreasonable, the officers are entitled to qualified immunity on Poole's excessive force claims." *Id*.

### C.    Bystander Liability

Regarding the allegation of bystander liability, Federal Rule of Civil Procedure 8(a) mandates that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In the context of bystander liability under § 1983, the Plaintiff must allege specific facts demonstrating that the defendant officer: (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. See, e.g. *Bass, supra* and *Perdans, supra*. In the instant case, none of these three requirements were alleged. Moreover, all 13 officers, whether patrol or SWAT, were all lumped together for bystander liability. Clearly, an officer could not be liable for bystander liability for his own conduct, but the complaint makes no effort to draw this distinction. Based on the foregoing, the bystander liability claim should be dismissed for failure to state a claim.

Assuming *arguendo* the Plaintiff met the pleading requirements of Federal Rule of Civil Procedure 8(a),  Sergeant Donald Dillow, Deputy Nahuel Faiura,

Sergeant Todd Klosternan and Deputy N.Poirier are nevertheless entitled to qualified immunity for bystander liability unless (1) one or more officers used excessive force; (2) the force used by an individual officer violated a clearly established constitutional right; (3) the individual officer's use of force was objectively unreasonable; (4) Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N.Poirier had a clearly established constitutional duty to intervene in that any reasonable office would have known the Constitution required them to intervene; (5) Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N.Poirier had a reasonable opportunity to prevent the harm and (6) Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N.Poirier chose not to act.

The claim of bystander liability is derivative of the use of excessive force. The elements of bystander liability are that the officer: (1) knows that a fellow officer is violating an individual's constitutional rights (the use of excessive force); (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *See e.g.*, *Whitley v. Hanna, supra, at* 646 and *Kitchen v. Dallas County, supra*, at 481. A classic example of bystander liability is *Hale, supra*. There, an officer stood by, laughed and offered encouragement as a fellow officer without provocation slammed Hale against a car, repeatedly tried to slam his head into a car and rammed his fist into

Hale's testicles. *Id.* at 919.

Importantly, there are two layers of protection for an officer to be liable for bystander liability. First, the officer alleged to have used excessive force must have not only used excessive force, but that force had to violate a clearly established constitutional right and the officer's conduct had to be unreasonable. The second layer of protection, at least in the Fifth Circuit, is that the plaintiff in pursuing a §1983 claim based on bystander liability has to show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing the acting officer was violating a clearly established constitutional right.[23]

As previously stated, an officer had to know that a fellow officer was violating an individual's constitutional rights. Finally, the bystander officer had to have a clearly established duty to intervene.

Turning to the laundry list of actions taken in ascending order as set forth above at pp. 24-25, the SWAT officers obviously could not have intervened in those actions that occurred prior to their arrival. Second, it would make no sense for an officer to intervene to stop a non-compliant defendant through the use of chemical irritants. Furthermore, it would have been most unusual for a non-canine officer to

---

[23] *Joseph on Behalf of Estate of Joseph, supra.*

stop the deployment of a canine to extract a con-compliant defendant from the cab of a truck. Importantly, the canine officer himself pulled thr dog off when the dog failed to remove the Defendant from the cab of the truck. Also, it would make little sense for an officer to prevent the firing of foam bullets at a non-compliant defendant. Lastly, turning to physically extracting the Defendant from the cab of the truck, 4 officers were in a very confined area, dealing with an incoherent and armed suspect. Were they supposed to intervene and fight each other, rather than extract the Defendant from the cab of the truck.

As set forth above, it is vigorously contested that any individual officer used excessive force. However, assuming *arguendo* that one or more did, and further assuming *arguendo* that the constitutional right was clearly established and that their actions were unreasonable, Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan  and Deputy N.Poirier are nevertheless entitled to qualified immunity for bystander liability.

Clearly, there is no established constitutional duty under such a scenario to intervene. We can sit in our air-conditioned offices, pontificating if anything could have reasonably been done by an individual officer to intervene, but the law is clear that we are not to look at it in 20/20 hindsight. This was a chaotic and evolving situation on a major Houston interstate with a non-compliant, incoherent and armed

arrestee. Even with the benefit of 20/20 hindsight, it's difficult to envision how any individual officer could have intervened to prevent the actions of another officer.

It is for reasons such as these that this Court in *Ramirez v. Escajeda*, 44 F.4th 287, 292 (5th Cir. 2022) advised:

> The clearly established inquiry is demanding, especially in claims for excessive force." *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021) (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). Excessive force cases often involve officers' "mak[ing] split-second decisions" and "[t]he results depend 'very much on the facts of each case.' " *Id.* at 1166 (quoting *Kisela v. Hughes*, ⸻ U.S. ⸻, 138 S. Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam)); *see Plumhoff v. Rickard*, 572 U.S. 765, 774, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) (observing "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" (quoting *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). This means existing precedent must "squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (cleaned up). ... An officer can be stripped of qualified immunity only when "the violative nature of the *particular* conduct is clearly established ... in light of the specific context of the case, not as a broad general proposition." ... In sum, controlling precedent must have placed the question "beyond debate," with "the right's contours ... sufficiently definite that any reasonable official in the [officer's] shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778–79, 134 S.Ct. 2012 (quoting *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074).

A reasonable officer in Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan  and/or Deputy N.Poirier's shoes would not have understood he was violating a constitutional duty.

CONCLUSION

The recent case of *Anderson v. Estrada* is almost exactly on point. Instead of trying to get a non-complaint defendant *into* a vehicle as in *Anderson*, this case deals with getting a non-compliant defendant *out* of a vehicle. Regarding bystander liability, it is derivative. Since there was no constitutional violation, there could be no bystander liability.

For all the foregoing reasons, this Court should reverse Judge Hittner's ruling that Sergeant Donald Dillow, Deputy Nahuel Faiura, Sergeant Todd Klosternan and Deputy N.Poirier are not entitled to qualified immunity for alleged excessive force or for bystander liability based on failing to intervene in the use of excessive force.

/s/ Richard Kuniansky
RICHARD KUNIANSKY, ATTORNEY FOR DEFENDANT-APPELLANTS DONALD DILLOW, SERGEANT, IN HIS INDIVIDUAL CAPACITY; NAHUEL FAIURA, DEPUTY, IN HIS INDIVIDUAL CAPACITY; TODD KLOSTERMAN, SERGEANT, IN HIS INDIVIDUAL CAPACITY; N. POIRIER, DEPUTY, IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I, RICHARD B. KUNIANSKY, certify that today, October 22 2025, an electronic copy of this Brief of Defendant Appellant was served upon Mr. Garrett Lee Gibbins and Mr. David Adler by electronic means.


 /s/ Richard Kuniansky
RICHARD KUNIANSKY


## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 35.5, undersigned counsel certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 35 (a)(7)(b).

1.    Exclusive of the portions exempted by 5TH CIR. R. 32(f), this brief contains 7,710 words.

2.    This brief has been prepared in proportionally spaced typeface using Corel WordPerfect X8 software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

3.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 35 (b)(2), may result in the Court's striking this brief and imposing sanctions against the person signing the brief.


  /s/ Richard Kuniansky
RICHARD KUNIANSKY