No. 25-20386

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

*Trinidad Cutshall,*

*Plaintiff - Appellee,*

*v.*

*Donald Dillow, Sergeant, in his Individual Capacity; Nahuel Faiura, Deputy, in his Individual Capacity; Todd Klosterman, Sergeant, in his Individual Capacity; N. Poirier, Deputy, in his Individual Capacity; D.R. Calhoun, Lieutenant, in his Individual Capacity; M.A. Carrizales, Sergeant, in his Individual Capacity; R.W. Holley, Deputy, in his Individual Capacity; C. Marshall, Deputy, in his Individual Capacity; P. Batton, Deputy, in his Individual Capacity,*

*Defendants - Appellants.*

---

Appeal from the United States District Court for the
Southern District of Texas - Houston Division, Civil Action No: 4:25-cv-02899,
Honorable David Hittner, District Judge Presiding

---

## APPELLEE'S BRIEF IN RESPONSE TO BRIEF OF APPELLANTS DONALD DILLOW, SERGEANT, IN HIS INDIVIDUAL CAPACITY; NAHUEL FAIURA, DEPUTY, IN HIS INDIVIDUAL CAPACITY; TODD KLOSTERMAN, SERGEANT, IN HIS INDIVIDUAL CAPACITY; N. POIRIER, DEPUTY, IN HIS INDIVIDUAL CAPACITY

---

*[Signature Block on Next Page]*

Respectfully submitted,

**LAW OFFICES OF GARRETT GIBBINS, PLLC**

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Texas Bar Number: 24125243
South Carolina Bar Number: 105706
New Mexico Bar Number: 163276
Arizona Bar Number: 039804
Colorado Bar Number: 61100
Oklahoma Bar Number: 36371
Illinois Bar Number:  6351087
Tennessee Licensure Pending
Federal ID: 3864602
728 West Donovan Street
Houston, Texas 77091
Email: garrettgibbins4747@yahoo.com
Phone: 512-587-8572
***Counsel for Plaintiff - Appellee:***
***Trinidad Cutshall***

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned Counsel of Record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Honorable Justices of this Honorable Court may evaluate possible disqualification or recusal.

1.  Mr. Garrett Lee Gibbins, Houston, Texas, Attorney for Trinidad Cutshall;

2.  Mr. Francis Joseph Ford of the Harris County Attorney's Office, Houston, Texas, Attorney for Harris County, Texas;

3.  Mr. David Adler, Houston, Texas, Attorney for C. Marshall, R.W. Holley, D.R. Calhoun, M.A. Carrizales, and P. Batton;

4.  Mr. Richard Kuniansky, Houston, Texas, Attorney for Donald Dillow, Nahuel Faiura, Todd Klosterman, and N. Poirier.

Respectfully submitted,

**LAW OFFICES OF GARRETT GIBBINS, PLLC**

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Texas Bar Number: 24125243
South Carolina Bar Number: 105706
New Mexico Bar Number: 163276
Arizona Bar Number: 039804
Colorado Bar Number: 61100
Oklahoma Bar Number: 36371
Illinois Bar Number:  6351087
Tennessee Licensure Pending
Federal ID: 3864602
728 West Donovan Street
Houston, Texas 77091
Email: garrettgibbins4747@yahoo.com
Phone: 512-587-8572
*Counsel for Plaintiff - Appellee:*
*Trinidad Cutshall*

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellee prays that this Honorable Court grant him the opportunity to argue his case in-person through an Oral Argument.  Appellee prays for such relief as this is a case that is comprised of sophisticated facts and law.  An Oral Argument may allow this Honorable Court to better understand the complexities of this matter. Appellee prays for the opportunity to Orally Argue this case before this Honorable Court. Through an Oral Argument all of this Honorable Court's questions, comments, and concerns will be prioritized, addressed, and answered in their entirety.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………………………………………i.

STATEMENT REGARDING ORAL ARGUMENT…………………………………ii.

TABLE OF AUTHORITIES……………………………………………………v-viii.

JURISDICTIONAL STATEMENT……………………………………………viii.

ISSUES PRESENTED………………………………………………………ix-x.

I.     STATEMENT OF THE CASE……………………………………………1.

    A.     **Factual Background**…………………………………………1.

    B.     **Facts Specific to Each Individual Appellant**…………………..7.

        i.     **Appellant Dillow**………………………………………7.

        ii.     **Appellant Faiura**………………………………………9.

        iii.     **Appellant Klosterman**……………………………………10.

        iv.     **Appellant Poirier**………………………………………11.

    C.     **Procedural Background**……………………………………12.

II.     SUMMARY OF THE ARGUMENT……………………………………13.

III.     ARGUMENT & AUTHORITIES………………………………………14.

    A.     **Appellee was the victim of excessive force under 42 U.S.C. § 1983 by Appellants and Appellants are not entitled to qualified immunity**………………………………………………14.

        i.     ***Santander v. Salazar***………………………………………14.

        ii.     ***Walls v. Sheriff's Office of Caddo Parish***…………………19.

   *iii.*  ***Graham v. Connor***…………………………………………22.

   *iv.*  ***Barnes v. Felix***………………………………………....27.

   *v.*  ***Ayers v. Hilliard***…………………………………………37.

   *vi.*  ***Greene v. DeMoss***………………………………………38.

   *vii.*  ***Austin v. City of Pasadena, Texas***…………………………42.

  **B.**  **Appellants are liable via Bystander Liability and/or Failure to Intervene under 42 U.S.C. § 1983 and Appellants are not entitled to qualified immunity**…………………………………..47.

   *i.*  ***Greene v. DeMoss***………………………………………47.

   *ii.*  ***Austin v. City of Pasadena, Texas***…………………………50.

**IV.** **Conclusion**………………………………………………...……51.

**V.** **Prayer**………………………………………………………51.

**Certificate of Service**………………………………………………..53.

**Certificate of Compliance**…………………………………………54.

## TABLE OF AUTHORITIES

<u>STATUTES:</u>

28 U.S.C. § 1291……………………………………………….viii.

28 U.S.C. § 1292……………………………………………….viii.

42 U.S.C. § 1983…………………………………….*passim* at iii. - 50.

<u>CASES:</u>

**UNITED STATES SUPREME COURT CASES:**

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)………………………………..17.

*Barnes v. Felix*, 605 U.S. 73 (2025)………………………………28, 30-32, 36.

*Bell v. Wolfish*, 441 U.S. 520 (1979)………………………………………24.

*Brigham City v. Stuart*, 547 U.S. 398 (2006)…………………………………30.

*County of Los Angeles v. Mendez*, 581 U.S. 420 (2017)………………………30.

*Dist. Of Columbia v. Wesby*, 583 U.S. 48 (2018)……………………………33.

*Elder v. Holloway*, 510 U.S. 510 (1994)……………………………………17.

*Graham v. Connor*, 490 U.S. 386 (1989)……………………….*passim* at 21-40.

*Hudson v. McMillian*, 503 U.S. 1 (1992)……………………………………37-38.

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015)………………………….30, 44.

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)…………………………..….viii.

*Mullenix v. Luna*, 577 U.S. 7 (2015)…………………………………..16.

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)………………………………..31.

*Reichle v. Howards*, 566 U.S. 658 (2012)……………………………………16.

*Scott v. Harris*, 550 U.S. 372 (2007)………………………………………33.

*Scott v. United States*, 436 U.S. 128 (1978)…………………………………25.

*Tennessee v. Garner*, 471 U.S. 1 (1985)………………………………22, 25, 40.

*Terry v. Ohio*, 392 U.S. 1 (1968)……………………………………………25.

*United States v. Place*, 462 U.S. 696 (1983)………………………………..24.

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT CASES:**

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023)…………………………………22.

*Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025)…………………………viii.

*Anderson v. McCaleb*, 480 F.App'x 768 (5th Cir. 2012)………………………46.

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020)…………………………17, 41.

*Austin v. City of Pasadena, Texas*, 74 F.4th 312 (5th Cir. 2023)……42-47, 50-51.

*Autin v. City of Baytown*, 174 F.App'x 183 (5th Cir. 2005)……………………46.

*Ayers v. Hilliard*, 172 F.3d 867 (5th Cir. 1999)……………………………..37-38.

*Bakutis v. Dean*, 129 F.4th 299 (5th Cir. 2025)………………………………22.

*Barnes v. Felix*, 91 F.4th 393 (5th Cir. 2024)…………………………………29.

*Barnes v. Felix*, 152 F.4th 669 (5th Cir. 2025)……………………………27-37.

*Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023)……………………..……..20.

*Brothers v. Zoss*, 837 F.3d 513 (5th Cir. 2016)………………………………46.

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008)………………………………20-21.

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015)………………………16-18, 48.

*Darden v. City of Ft. Worth*, 880 F.3d 722 (5th Cir. 2018)……………………46-47.

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009)……………………….…20-21.

*Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777 (5th Cir. 2015)……16.

*Greene v. DeMoss*, No. 21-3004, 2022 WL 3716201 (5th Cir. 2022)……………………………………………………………ix, 38-42, 47-50.

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016)……………………………….40.

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)…………………………………48.

*Hamilton v. Kindred*, 845 F.3d 659 (5th Cir. 2017)……………………....…48.

*Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020)……………………………………………………33, 41, 46, 48, 50.

*Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009)……………………….16-17.

*Massey v. Wharton*, 477 F.App'x 256 (5th Cir. 2012)………………………46.

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012)………………………....46.

*Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009)…………………16.

*Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018)………………...16.

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012)……………………16, 40.

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013)…………………….....33, 46.

*Salazar v. Molina*, 37 F.4th 278 (5th Cir. 2022)……………………………….20.

*Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025)………………….....14-19, 22.

*Sims v. Griffin*, 35 F.4th 945 (5th Cir. 2022)……………………………………44.

*Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900 (5th Cir. 2024)….....22.

*Spiller v. Harris Cnty., Texas*, 113 F.4th 573 (5th Cir. 2024)………………16-18.

*Strokes v. Gann*, 498 F.3d 483 (5th Cir. 2007)……………………………………16.

*Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021)………………………………45-46.

*Thompson v. Upshur Cnty.*, 245 F.3d 447 (5th Cir. 2001)………………………44.

*Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021)……………...……40-41.

*Walls v. Sheriff's Office of Caddo Parish*, No. 23-30253, 2023 WL 8451219 (5th Cir. 2023)……………………………………………………………………...…19-22.

*Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018)…………………………………..41.

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)…………………………….48, 50.

## OTHER AUTHORITIES:

BRIEF FOR UNITED STATES AS *AMICUS CURIAE* 14……………………...…31.

## JURISDICTIONAL STATEMENT

This Honorable Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. §§ 1291; 1292, respectively.  Additionally, this Honorable Court has so reasoned that, "This Court has jurisdiction because 'a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.'" *Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025); citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985).  Appellee hereby stipulates that Appellants' notice of appeal was timely.  ROA.1232-33; 1238-39, respectively.

## ISSUES PRESENTED

The first issue presented for review is whether the District Court erred in denying Appellants' Motions to Dismiss on the basis of qualified immunity regarding Appellee's claims for excessive force under 42 U.S.C. § 1983. The District Court did not err in so denying said Motions to Dismiss on the basis of qualified immunity. ROA.1232-33. The Appellants engaged in excessive force under 42 U.S.C. § 1983 because Appellee has shown: 1) an injury; 2) which resulted directly and only from a use of force that was clearly excessive and; 3) the excessiveness of which was clearly unreasonable. *Greene v. DeMoss*, No. 21-3004, 2022 WL 3716201, at *3 (5th Cir. 2022). Appellants are not entitled to qualified immunity because Appellee has shown: 1) a statutory or Constitutional violation based on the alleged facts and; 2) the Appellants' actions violated clearly established law that every person would have known. *Id.* at *2. Thus, the District Court did not err in denying Appellants' Motions to Dismiss via qualified immunity. ROA.1232-33.

The second issue presented for review is whether the District Court erred in denying Appellants' Motions to Dismiss on the basis of qualified immunity regarding Appellee's claims for bystander liability under 42 U.S.C. § 1983. The District Court did not err in so denying said Motions to Dismiss on the basis of qualified immunity. ROA.1232-33. Appellants are liable via bystander liability (i.e., a/k/a failure to intervene) because Appellee has shown that Appellants: 1)

knew   fellow officers were violating Appellee's Constitutional rights; 2) were present at the scene of the Constitutional violations; 3) had reasonable opportunities to prevent the harm but, nevertheless; 4) chose not to act. *Id.* at *4. Appellants are not entitled to qualified immunity because Appellee has shown: 1) a statutory or Constitutional violation based on the alleged facts and; 2) the Appellants' actions violated clearly established law that every person would have known. *Id.* at *2. Thus, the District Court did not err in denying Appellants' Motions to Dismiss via qualified immunity.  ROA.1232-33.[1]

---

[1] Appellee's Original Petition consists of Fifteen different Counts, not all of which are directed at Appellants. ROA.38-56.  However, Appellants' Brief only mentioned Counts One and Four (i.e., Excessive Force and Bystander Liability under 42 U.S.C. § 1983).  Appellants failed to mention Counts Six and Seven (i.e., Summary Punishment and Failure to Provide Medical Aid in a Timely Manner under 42 U.S.C. § 1983).  Additionally, Appellants failed to mention Appellee's state law claims that implicate Appellants directly and indirectly (i.e., Counts Eight-Fifteen).  As such, Appellee's Brief will only discuss the issues that Appellants have raised on appeal (i.e., Excessive Force and Bystander Liability under U.S.C. § 1983) and will not discuss nor analyze any of the other issues that Appellants have failed to raise on appeal.  Thus, Appellants have waived said unmentioned issues on appeal and Appellee prays to this Honorable Court that said unmentioned issues survive dismissal in their entirety.

# I.     STATEMENT OF THE CASE

## A.     Factual Background

1.1     This is a factually intensive case fleshed out in great detail within Appellee's Original Complaint.  ROA.10-11; 13-37, respectively.  For the sake of brevity, Appellee sets forth to this Honorable Court the following facts in a rather concise manner.  On or about December 27, 2023, Appellee was a long-haul truck driver operating a tractor-trailer down Interstate 10 in Harris County, Texas. Appellee was completely sober and there was no alcohol nor illicit drugs in Appellee's system *[emphasis added]*.  ROA.284; 294, respectively.



*Snippet from ROA.284. proving that there was no alcohol in Appellee's system at the time of the incidents made the bases of this lawsuit.*

**HARRISHEALTH**
SYSTEM

Cutshall, Trinidad Rey
MRN: 082642641  DOB: 1/25/1981  Sex :M
Adm: 12/27/2023 , D/C 1/2/2024
Medicaid #

**12/27/2023 - ED to Hosp-Admission (Discharged) in 5G MED/SURG (continued)**

Labs (continued)

| | | | | |
|---|---|---|---|---|
| Positive if urine level > or = 300 ng/mL. | | | | |
| Amphetamine<br>Comment:<br>Calibrated Standard: D-Methamphetamine<br><br>Positive if urine level > or = 1000 ng/mL | Negative | Negative | — | BTLAB |
| Barbiturate<br>Comment:<br>Calibrated Standard: Secobarbital<br><br>Positive if urine level is > or = 200 ng/Ml | Negative | Negative | — | BTLAB |
| Benzodiazepine<br>Comment:<br>Calibrated Standard: Lormethazepam<br><br>Positive if urine level is > or = 200 ng/mL | Negative | Negative | — | BTLAB |
| Cocaine<br>Comment:<br>Calibrated Standard: Benzoylecgonine<br><br>Positive if urine level > or = 300 ng/mL. | Negative | Negative | — | BTLAB |
| PCP<br>Comment:<br>Calibrated Standard: Phencyclidine<br><br>Positive if urine level > or = 25 ng/mL. | Negative | Negative | — | BTLAB |
| Cannabinoid<br>Comment:<br>Calibrated Standard: 11 nor-delta(9)-THC carboxylic acid<br><br>Positive if urine level > or = 50 ng/mL. | Negative | Negative | — | BTLAB |

*Snippet from ROA.294. proving that there were no illicit drugs in Appellee's
system at the time of the incidents made the bases of this lawsuit.*

  1.2  Appellee was operating his tractor-trailer around 5mph for around an

hour and exhibiting signs of disorientation.  This is because Appellee was suffering

from septic shock resulting from coronavirus. ROA.651.



| | Cutshall, Trinidad Rey |
|---|---|
| | MRN: 082642641  DOB: 1/25/1981  Sex :M |
| | Adm: 12/27/2023 , D/C 1/2/2024 |
| | Medicaid # |

**12/27/2023 - ED to Hosp-Admission (Discharged) in 5G MED/SURG**
**Coding Queries (continued)**

CDI Queries (continued)

PLEASE RESPOND VIA EPIC IN-BASKET MESSAGE REPLY. After we receive your reply, this message
will become part of the permanent legal medical record.

Documentation in the 12/28/23 states, "#Dog bite wounds
- c/f sepsis (leukocytosis, tachy, fever)
- possibly due to dog bite" and
"AKI
- creatinine improved with IVF".

Documentation in the Progress note on 12/28/23 states, "Sepsis
#COVID+

*Snippet from ROA.651. proving that Appellee was suffering from Sepsis*
*resulting from Coronavirus at the time of the incidents made the bases of this*
*lawsuit, thus, proving medical emergency.*

1.3    Hundreds of authorities shut down Interstate 10. Appellants

acknowledged numerous times that Appellee was non-responsive, was of no threat,

was completely disoriented, and was likely suffering from a medical emergency.[2]

Nevertheless, during the arrest made the bases of this litigation, Appellants shot

---

[2] *See* ROA.693. (where Appellant Carrizales insinuates in the incident report that Appellee was
likely experiencing a medical emergency); *see also* ROA.696. (where Appellant Batton
acknowledged that the rubber bullets fired at Appellee yielded no reaction from him); *see*
ROA.708. (where Appellant Luna acknowledged that the tear gas deployed had a minimal effect
on Appellee); *see* ROA.703-04. (where Appellant Dillow acknowledged Appellee was staring off
into the distance in front of him, did not acknowledge Appellants' presence, was completely
immune to any bullets or tear gas, and appeared to think he was continuing to be driving); *see*
ROA.709. (where Appellant Cogburn acknowledged that Appellee appeared to be completely
disoriented all the while).

3

Appellee with rubber bullets[3], deployed tear gas[4], ripped Appellee to shreds with vicious German Shepherds[5], and punched Appellee repeatedly in the back of the skull while another deputy was holding Appellee down until the point of unconsciousness.[6]  All of these acts are on video and the undersigned Counsel is willing to show this Honorable Court this video proof at the time of Oral Argument, should this Honorable Court grant it *[emphasis added]*.

1.4    Appellee was later indicted on felony evading charges, which were of course dismissed in their entirety.  ROA.740-43.  This was because Appellee did not have the *mens rea* of "intentionally" to satisfy the statute for felony evading. In fact, Appellee had no *mens rea* at all at the time of the incidents made the bases

---

[3] *See* ROA.659. (where Appellant Holley brags about shooting Appellee with rubber bullets); *see also* ROA.660. (where Appellant Sandor also brags about shooting Appellee with rubber bullets); *see also* ROA.696. (where Appellant Batton also brags about shooting Appellee with rubber bullets).

[4] *See* ROA.660. (where Appellant Sandor brags about deploying tear gas on Appellee); *see also* ROA.708. (where Appellant Luna also brags about deploying tear gas on Appellee).

[5] *See* ROA.669. where Appellant Marshall brags about ripping Appellee to shreds with his canine German Shepherd.  Appellee possesses a video that he wishes to show this Honorable Court at the time of Oral Argument, should it be granted, where Appellee is screaming, "Please God help me," while the German Shepherd is ripping him to shreds.  At the same time, Appellants Poirier and Klosterman are punching Appellee in the back of the skull until the point of unconsciousness while another deputy holds Appellee down.  *See* ROA.707. (where Appellant Poirier brags about punching Appellee in the back of the skull until the point of unconsciousness); *see also* ROA.702 (where Appellant Klosterman also brags about punching Appellee repeatedly in the back of the skull after he witnesses Appellant Poirier do so).

[6] *See* ROA.669; 702; 707, respectively (where Appellants Poirier and Klosterman brag about punching Appellee in the back of the skull in unison until the point of unconsciousness, while another deputy holds Appellee down, and also while Appellant Marshall rips Appellee to shreds with a vicious German Shepherd).

4

of this litigation because he was completely disoriented, was of no threat, and was suffering from a medical emergency. Appellee desperately needed medical attention rather than almost being brutally murdered by Appellants in cold blood.

    1.5    Appellee was the victim of policy brutality and excessive force that our Constitution and this Honorable Court has so expressly loathed. This incident has made the national news and the underlying lawsuit has been the talk of both ABC and FOX news channels in Houston, Texas.[7]   It is Appellee's hope that through this landmark case, Americans everywhere will accept that police brutality is archaic and obsolete and has no place in a modern and civilized society. As such, Appellee prays to this Honorable Court that it may affirm the judgment of the District Court in its entirety that denied Appellants' nine (9) Motions to Dismiss in their entirety. ROA.1232-33.

---

[7] https://abc13.com/post/harris-county-deputies-sued-18-wheeler-pursuit-driver-claimed-he-was-beat-chase-during-medical-emergency/17789371/ (ABC) ; https://www.youtube.com/watch?v=_FTVvNndtyE (FOX).



*This is a photo of Appellee after being beaten, shot with rubber bullets, ripped to shreds by German Shepherds, succumbing to tear gas, and being punched repeatedly by law enforcement in the head and face until the point of unconsciousness.* **ROA.11.**

**B.     Facts Specific to Each Individual Appellant**

**i.     Appellant Dillow**

1.6     Appellant Dillow was one of the lead supervisors in this parade that failed to recognize that Appellee was suffering from a medical emergency. Appellant Dillow also authorized his team of "Army Rangers" to employ the aforementioned tactics.   Appellant Dillow was one of the lead supervisors that employed the Harris County Sheriff's Office "BEAR" [i.e., SWAT armored vehicle].



*Harris County Sheriff's Office SWAT BEAR Armored Vehicle.* **ROA.30.**



***Another image of the Harris County Sheriff's Office SWAT BEAR Armored Vehicle.* ROA.30.**

1.7     Appellant Dillow brags in his narrative:

> *[I] formed an arrest team and staged the BEAR (armored vehicle assigned to SWAT).   Once the BEAR arrived, I entered the back of it with several other SWAT members. The BEAR was moved onto the freeway and positioned with the front bumper near the front bumper of the 18-wheeler... I saw the suspect* [Appellee] *sitting in the driver's seat and* **he was staring straight in front of him [emphasis added].  He did not acknowledge our presence or focus on us [emphasis added].  The suspect was holding the steering wheel and appeared that he thought he was driving the truck [emphasis added]**... *After some time passed, chemical munitions [i.e., Tear Gas] were deployed through the front windshield and the male* **[Appellee]** *did not show any signs the chemicals had much effect on him [emphasis added].   The male* **[Appellee]** *continued to hold the steering wheel and appeared that he believed that he was driving the truck [emphasis added]*... *I helped pull the male* [Appellee] *out*

*and he fell to the ground **[emphasis added]**… I placed my
knee near the lower portion of his back.*[8]

1.8    Perhaps Appellee did not respond to armored vehicles and tear gas
because he had already succumbed to a medical emergency and was unconscious
***[emphasis added]***. ROA.651. Instead of recognizing that Appellee was undergoing
a medical emergency and proffering immediate medical attention, Appellant
Dillow rammed Appellee's tractor-trailer with the BEAR, deployed tear gas, and
threw Appellee down on the hard concrete.  This is the class paradigm of excessive
force and police brutality that nearly killed Appellee on the day of the incidents
made the bases of this litigation.

**ii.    Appellant Faiura**

1.9    Appellant Faiura used excessive force on Appellee by ripping him out
of the tractor-trailer and throwing him on the hard concrete in a violent manner.  In
fact, Appellant Faiura brags in his narrative:

> *I reached in the cabin and grabbed the suspect
> [Appellee] by his shirt…. Shortly after, the suspect
> [Appellee] **placed his right arm in front of him and it
> had blood and bodily fluids on it [emphasis added]**… I
> grabbed him [Appellee] by the forearm area with both of
> my hands and pulled him out of the cabin… while on the
> ground, I placed my knee on the back of the suspect's
> [Appellee's] right shoulder blade.*[9]

---

[8] ROA.703-04.

[9] ROA.684.

1.10    Instead of realizing that Appellee had succumbed to a medical emergency and was ripped to shreds by a German Shepherd, Appellant Faiura violently ripped Appellee out of his tractor-trailer and threw him on the hard concrete. Appellant Faiura even acknowledged that Appellee was bleeding immensely and nevertheless continued onward with excessive force in complete violation of Appellee's Constitutional protections.

1.11    Most notably, at this point, Appellee was already unconscious due to the totality of the circumstances, namely, because **he was punched repeatedly in the back of the head with closed fists *[emphasis added]*.**    This is the classic paradigm of excessive force and police brutality that deprived Appellee of his Constitutional protections on the day of the incidents made the bases of this litigation.

### iii.    Appellant Klosterman

1.12    Appellant Klosterman joined Appellant Poirier in punching Appellee repeatedly in the back of the head with closed-first strikes, even after Appellee demonstrated overtly that he was already unconscious *[emphasis added]*. The undersigned Counsel has video proof of these horrid series of events and will show this Honorable Court at the time of Oral Argument, should it be granted.    Appellant Klosterman also ordered the deployment of tear gas.[10]

---

[10] ROA.708.

1.13    Appellant Klosterman brags in his narrative:

> *I, and another SWAT member* [Appellant Poirier]*, entered the truck through the sleeper cab opening and tried to forcefully remove the subject* [Appellee] *from the truck… I observed* [Appellant Poirier] *deliver closed fist strikes…* ***I then delivered three hammer first strikes to the face of the subject*** **[Appellee]***, which appeared effective [emphasis added]*.[11]

1.14    So, while Appellee was already unconscious due to a medical emergency, Appellant Klosterman and Appellant Poirier punched Appellee in the head and face repeatedly with their closed fists *[emphasis added]*.   Again, it is a miracle that Appellee was not murdered on the day of the incidents made the bases of this litigation.  This is the classic paradigm of excessive force and police brutality that this Honorable Court should not tolerate.

**iv.    Appellant Poirier**

1.15    One of the most disturbing narratives in the entire incident report arises from Appellant Poirier's actions.  Appellant Poirier brags in his narrative:

> *I deployed three (3) less lethal foam-marking rounds into the cab of the truck. Two (2) of the rounds struck the suspect* [Appellee]*.  I deployed these less lethal rounds to gain pain compliance from the suspect* [Appellee]*... I observed the HCSO [Harris County Sheriff's Office] K9 entering into the vehicle through the passenger side opening.  I observed the K9 take hold of the suspect… Due to the confined space and suspect's level of resistance,* ***I delivered several closed fist strikes to the suspect's*** **[Appellee's]** ***head and face… [emphasis***

---

[11] ROA.702.

*added]... I [then] delivered several more **closed fist** strikes to the suspect's [Appellee's] face with my left hand...*[12]  *While inside the cab of the truck, I struck the suspect [Appellee] 4-5 times with a closed fist on his head and face area [emphasis added].*[13]

1.16    While Appellee was being ripped to shreds by Appellant Marshall's K9 German Shepherd[14], Appellant Poirier thought it prudent to shoot Appellee repeatedly with rubber bullets and, also, **punch him repeatedly in his head with a closed fist until the point of unconsciousness *[emphasis added]*.** Additionally, this was in unison with Appellant Klosterman.[15]   This is the classic paradigm of excessive force and police brutality that this Honorable Court should not tolerate. It is a miracle that Appellee was not brutally murdered during this shocking series of unconstitutional events.

## C.    Procedural Background

1.17    On June 22, 2025, Appellee filed his Original Complaint and Jury Demand.  ROA.9-59.  On July 18, 2025, Appellee granted Appellants' request to extend their time to review the evidence and file a responsive pleading. ROA.818-19. Then, on August 28, 2025, Appellants filed a myriad of different Motions to Dismiss based on qualified immunity.  ROA.939-1018.

---

[12] ROA.676.

[13] ROA.707.

[14] ROA.669.

[15] ROA.702.

1.18   On September 2, 2025, Appellee filed a plethora of different Responses in Opposition to Appellants' various Motions to Dismiss based on qualified immunity. ROA.1042-1104; 1106-1231, respectively. Then, on September 4, 2025, the Honorable David Hittner denied all of the Motions to Dismiss in their entirety. ROA.1232-33. On September 8, 2025, Appellants filed their Notice of Interlocutory Appeal.  ROA.1238-39.  Then on October 22, 2025, Appellants filed their Appellants' Brief to which Appellee is responding.

## II.   Summary of the Argument

2.1   In the case at bar, Appellee's claims for excessive force and bystander liability under 42 U.S.C. § 1983 should survive dismissal in their entirety because qualified immunity does not apply here.  Appellee's excessive force claim under 42 U.S.C. § 1983 is viable and should survive dismissal as Appellee has stated: 1) an injury; 2) which resulted directly and only from a use of force that was clearly excessive and; 3) the excessiveness of which was clearly unreasonable.

2.2   Appellants engaged in excessive force from an objective standpoint in weighing the totality of the circumstances from the beginning of their encounter with Appellee until the every end. There was no crime being committed by Appellee. Appellee posed no immediate threat to the safety of Appellants or others. Additionally, Appellee was not actively resisting arrest nor attempting to evade arrest by flight.  As such, the force employed was clearly disproportionate to the need.  There was no negotiation, nor attempt to de-escalate the situation, prior to

13

the tactics employed.  Thus, Appellee's claims of excessive force under 42 U.S.C. § 1983 should survive dismissal in their entirety.

2.3    Additionally, Appellants are not entitled to qualified immunity in the case at bar because: 1) Appellants violated Appellee's statutory and Constitutional rights and; 2) the rights were clearly established at the time of the challenged conduct.  Any force used on an individual when the individual is subdued, not resisting, not fleeing, and especially when the individual is succumbing to a medical emergency is clearly excessive and, thus, qualified immunity does not apply.

2.4    Additionally, here, Appellants: 1) knew that fellow deputies were violating Appellee's Constitutional rights; 2) were present at the scene of the Constitutional violations; 3) had reasonable opportunities to prevent the harms but nevertheless; 4) chose not to act.  Thus, Appellee's claims for bystander liability under 42 U.S.C. § 1983 should survive dismissal in their entirety as qualified immunity does not apply.

### III.    ARGUMENT & AUTHORITIES

**A.    Appellee was the victim of excessive force under 42 U.S.C. § 1983 by Appellants and Appellants are not entitled to qualified immunity.**

#### i.    *Santander v. Salazar*

3.1    This Honorable Court so beautifully articulated the proper analysis when analyzing excessive force claims under 42 U.S.C. § 1983 in its seminal and

14

recent *Santander* opinion.    *Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025). There, on a summer evening in July of 2022, Plaintiff-Appellant and his wife were patrons at a sports bar in Fort Worth, Texas.    *Id.* at 476.    The Defendant-Appellee was an off-duty police officer employed by the Fort Worth Police Department and was wearing his department-issued badge and service weapon.    *Id.*    Plaintiff-Appellant had not consumed any alcohol that evening at the time of the incidents made the bases of said litigation.    *Id.* at 480.

3.2    Following a verbal altercation with other staff members of the sports bar, Defendant-Appellee pushed Plaintiff-Appellant from the back suddenly and without provocation, causing Plaintiff-Appellant to fall to the ground face first onto the concrete.    *Id.* at 476.    Subsequently, Defendant-Appellee punched Plaintiff-Appellant several times in the face and head and caused Plaintiff-Appellant to lose consciousness.    *Id.*    Plaintiff-Appellant was arrested and charged with public intoxication, however, the charges were eventually dismissed in their entirety.    *Id.*

3.3    Plaintiff-Appellant sued Defendant-Appellee for excessive force under 42 U.S.C. § 1983.    *Id.* at 477.    Defendant-Appellee of course filed a 12(b)(6) Motion to Dismiss for a failure to state a claim asserting qualified immunity as his defense.    *Id.* The district court dismissed the case with prejudice, concluding that Plaintiff's-Appellant's complaint failed to allege that Defendant-Appellee violated any clearly established right.    *Id.*

3.4    This Honorable Court first reasoned that, "We review a district court's decision on a Rule 12(b)(6) motion *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Id.;* citing *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015); (quoting *Strokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Additionally, this Honorable Court so sagaciously reasoned that "the [plaintiff's] well-pleaded factual allegations enjoy a presumption of truth." *Id.;* citing *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018).

3.5    This Honorable Court so reasoned that:

> A plaintiff asserting an excessive force claim under the Fourth Amendment must demonstrate: "1) an injury; 2) which resulted directly and only from a use of force that was clearly excessive and; 3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)… A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)… Relevant here, it is clearly established that "officers engage in excessive force when they physically strike a suspect who is not resisting arrest *[emphasis added]*." *Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 578 (5th Cir. 2024); *see also Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive.")… *Cf. Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009) ("An

16

excercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.").[16]

Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing: 1) that the official violated a statutory or Constitutional right and; 2) that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)… However, "an assertion of qualified immunity does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)… The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to "identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). The operation of such a rule would be unpredictable in advance of the district court's adjudication and would "simply release defendants because of shortages in counsel's or the court's legal research or briefing." *Id.*[17]

3.6     This Honorable Court reasoned that because Plaintiff-Appellant was not resisting, the force used was clearly excessive to the need and qualified immunity did not apply so as to shield Defendant-Appellee. *Id.* at 480. This Honorable Court found its *Spiller* and *Carroll* opinions compelling in that "it is clearly established that officers engage in excessive force when they physically strike a suspect who is not resisting arrest… once a suspect has been subdued and is no longer resisting, an officer's subsequent use of force is excessive *[emphasis*

---

[16] *Santander*, 133 F.4th at 479-81.

[17] *Santander*, 133 F.4th at 478.

*added].*" *Id.;* citing *Spiller*, 113 F.4th at 578; *Carroll*, 800 F.3d at 177.  In the end, this Honorable Court held that Plaintiff-Appellant stated a plausible excessive force claim so as to support the denial of qualified immunity with regard to such a claim.   *Id.* at 483.  As such, the district court's dismissal of Plaintiff-Appellant's excessive force claim was reversed.  *Id.*

3.7    Here, Appellants acknowledged numerous times that Appellee was non-responsive, was of no threat, was not resisting, was completely disoriented, and was likely suffering from a medical emergency.  *See supra*, note 2.  Like the Plaintiff-Appellant in *Santander*, Appellee here was sober,[18] was of no threat, and was not resisting in any way.   Also, like the Defendant-Appellee in *Santander*, Appellants here were ruthlessly punching Appellee in the head and face area.  *See* paragraphs 1.12-1.16, *supra*. Also, like the Plaintiff-Appellant in *Santander*, Appellee's criminal case here was dismissed in its entirety. ROA.740-43.

3.8    Here, in looking holistically at the totality of the circumstances, Appellee was suffering from a medical emergency,[19] was sober,[20] and was not resisting in any way.[21]   Instead of proffering medical attention, Appellants shot Appellee with rubber bullets, ripped him to shreds with German Shepherds,

---

[18] ROA.284; 294, respectively.

[19] ROA.651.

[20] ROA.284; 294, respectively.

[21] *See supra*, note 2.

deployed tear gas, and punched him repeatedly in unison in the back of the skull until the point of unconsciousness while another deputy was holding Appellee down. *See supra*, notes 3-6. This is the classic paradigm of excessive force that this Honorable Court has so expressly loathed. Thus, Appellee prays that this Honorable Court look to its seminal *Santander* opinion for wisdom and affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety. ROA.1232-33.

### ii.     *Walls v. Sheriff's Office of Caddo Parish*

3.9     This Honorable Court also analyzed the very issues made the bases of this appeal in its seminal *Walls* opinion. *Walls v. Sheriff's Office of Caddo Parish*, No. 23-30253, 2023 WL 8451219 (5th Cir. 2023). There, deputies attempted to execute an arrest warrant for a wanted individual suspected to be on a homeowner's premises. *Id.* at *1. The individual was not found and the situation escalated between the property owner and the investigating deputies. *Id.* The situation escalated to the point where consent to search the premises was revoked. *Id.*

3.10   One of the investigating deputies threw the property owner against his kitchen counter, handcuffed him, aggressively and violently pulled him from his home, slammed him against the hood of his patrol car, and forced him into the back of the car. *Id.* After a short period of time, the property owner suffered a heart attack and died. *Id.* The property owner's two surviving sons (hereinafter

19

"Plaintiffs-Appellees") filed a lawsuit against the deputies alleging excessive force under 42 U.S.C. § 1983. *Id.* The deputies (hereinafter "Defendants-Appellants") of course moved for a 12(b)(6) dismissal based on qualified immunity. *Id.* The district court denied the qualified immunity defense and the Defendants-Appellants timely appealed. *Id.*

3.11    This Honorable Court analyzed what exactly must be shown to overcome a qualified immunity defense and once again reasoned that in order to survive a qualified immunity 12(b)(6), a plaintiff must show: 1) that their Constitutional rights were violated and; 2) the rights at issue were clearly established at the time of the alleged misconduct. *Id.* at *2.; citing *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022). This Honorable Court reasoned that, "Our Court has repeatedly said that circuit precedent can clearly establish the law." *Id.*; citing *Boyd v. McNamara*, 74 F.4th 662, 670-71 (5th Cir. 2023).

3.12    This Honorable Court then so reasoned that:

> Assuming our precedent can clearly establish the law, two of our cases are relevant here. *See Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008); *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). In *Bush*, we denied qualified immunity where the officer slammed a compliant arrestee's face into the window of a nearby car, injuring her jaw and teeth. *See* 513 F.3d at 500-02. And in *Deville*, we denied qualified immunity where the officer pulled over a woman for speeding, ordered her out of the car, and then (when she did not comply) broke the vehicle's window, pulled the woman out, and caused her multiple injuries (including "contusions to both wrists, neuropathy of her hands, right shoulder strain, left

shoulder bruising (with hand prints), and multiple cuts caused by broken glass"). *See* 567 F.3d at 167-69. Under *Bush* and *Deville*, the district court did not err. On the well-pleaded facts of this case, [the property owner/decedent] was not suspected of any crime, posed no immediate threat to the safety of the deputies or others, and made no attempt to actively resist arrest or evade arrest by flight.[22]

3.13   This Honorable Court ultimately affirmed the judgment of the district court which denied the 12(b)(6) Motion to Dismiss based on qualified immunity. *Id.* at *3. Here, this Honorable Court should look to its *Walls* opinion to arrive at the same conclusion that the *Walls* Court did - that the force utilized in the case at bar was clearly excessive to the need in violation of 42 U.S.C. § 1983.  Here, just like the property owner/decedent in *Walls*, Appellee: posed no immediate threat to the safety of the deputies or others, made no attempt to actively resist arrest, and was not attempting to evade arrest by flight.[23]

3.14   If Appellee was attempting to evade arrest by flight, he would have been driving faster than 5mph. Clearly, Appellee was suffering from a medical emergency.  ROA.651.  Multiple Appellants admitted that Appellee was dazed and confused and was not fighting back nor resisting arrest in any manner.  *See supra*, note 2.  Nevertheless, Appellants proceeded to nearly murder Appellee.  *See supra*, notes 3-6. This is the classic paradigm of excessive force in violation of the United

---

[22] *Walls*, No. 23-30253, 2023 WL 8451219 at *2; [citing *"Graham* Factors," *see infra*, paragraphs 3.15-3.27].

[23] *See "Graham* Factors," *infra*, paragraphs 3.15-3.27.

States Constitution that this Honorable Court has so expressly loathed in years' past.[24]    Thus, Appellee prays that this Honorable Court look to its seminal *Santander* and *Walls* opinions for wisdom and affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.  ROA.1232-33.

### iii.    Graham v. Connor

3.15    The United States Supreme Court set forth the proper analysis when analyzing excessive force claims in its seminal *Graham* opinion.    *Graham v. Connor*, 490 U.S. 386 (1989).   There, the Plaintiff-Petitioner sued for excessive force under 42 U.S.C. § 1983 for injuries sustained when law enforcement officers used physical force against him during an investigatory stop. *Id.* at 388.    The Plaintiff-Petitioner, a diabetic, felt the onset of an insulin reaction.    *Id.*    The Plaintiff-Petitioner then asked a friend to drive him to a nearby convenience store so he could purchase some orange juice to counteract the reaction.  *Id.*

3.16    Once in the convenience store, the Plaintiff-Petitioner saw a number of people ahead of him in the check-out line.  *Id.* at 388-89.   Concerned about the

---

[24] *See also Bakutis v. Dean*, 129 F.4th 299, 306 (5th Cir. 2025) ("The Supreme Court's jurisprudence, as well as our own, has repeatedly declared the use of deadly force to be objectively reasonable - for Fourth Amendment purposes - *only* when… the suspect poses an immediate and significant threat of death or serious physical injury to the officer or others [i.e., *Graham* Factors];" citing *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900 (5th Cir. 2024); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Bakutis*, 129 F.4th at 307; citing *Tennessee*, 471 U.S. at 11 ("A police officer may not seize an unarmed, non-dangerous suspect by shooting him."); *Allen v. Hays*, 65 F.4th 736, 744-45 (5th Cir. 2023).

delay, the Plaintiff-Petitioner hurried out of the store and asked his friend to drive him to a friend's house instead. *Id.* at 389. An officer saw the Plaintiff-Petitioner hastily enter and leave the store. *Id.* The officer became suspicious and followed the Plaintiff's-Petitioner's car. *Id.* About one-half mile from the store, the officer (hereinafter "Defendant-Respondent") made an investigative stop. *Id.*

3.17   Although the officer was told that Plaintiff-Petitioner was suffering from a "sugar reaction," the officer ordered the Plaintiff-Petitioner to wait while he found out what, if anything, had happened at the convenience store. *Id.* When the Defendant-Respondent returned to his patrol car to call for backup assistance, the Plaintiff-Petitioner got out of the car, ran around it twice, and finally sat down on the curb, where he passed out briefly. *Id.*

3.18   In the midst of this, other backup officers (i.e., members of the Defendant-Respondent et. al. group) arrived on scene. *Id.* One of the officers rolled the Plaintiff-Petitioner over on the sidewalk and cuffed his hands together tightly. *Id.* All requests to get Plaintiff-Petitioner some sugar were ignored. *Id.* Several officers (i.e., members of the Defendant-Respondent et. al. group) lifted the Plaintiff-Petitioner from the back, carried him over to the patrol car, and placed him faced down on the hood. *Id.* Regaining consciousness, the Plaintiff-Petitioner again requested his diabetic medicine. *Id.*

3.19   The Defendant-Respondent then shoved Plaintiff's-Petitioner's head into the hood of the car. *Id.* Plaintiff-Petitioner was then thrown head-first into the

back of the patrol car. *Id*. A friend brought Plaintiff-Petitioner some orange juice but the Defendant-Respondent refused to let Plaintiff-Petitioner have it. *Id*. Then the Defendant-Respondent received a report that Plaintiff-Petitioner did nothing wrong at the convenience store and the Plaintiff-Petitioner was released. *Id*.

3.20   At some point during his encounter with the police, the Plaintiff-Petitioner sustained a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder; he also claimed to have developed a loud ringing in his right ear that continues to this day. *Id*. at 390. The Plaintiff-Petitioner then sued for excessive force under 42 U.S.C. § 1983. The case was tried before a jury and Defendant-Respondent moved for a directed verdict. *Id*. The directed verdict was granted based on a faulty analysis and affirmed on appeal. *Id*. at 390-91.

3.21   The United States Supreme Court held and made explicit that:

> All claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard… Determining whether the force used to effect a particular seize is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake." *United States v. Place*, 462 U.S. 696, 703 (1983)… "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)… However, its proper application requires careful attention to the facts and circumstances of each particular case, including the:

[1] severity of the crime at issue; [2] whether the suspect poses poses an immediate threat to the safety of the officers or others and; [3] whether he is actively resisting arrest or attempting to evade arrest by flight [hereinafter "*Graham* Factors"]. *See Tennessee*, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifies a particular sort of seizure.")… the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Scott v. United States*, 436 U.S. 128, 137-39 (1978); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard").[25]

3.22    The United States Supreme Court ultimately held that "the Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Id.* at 399.  Because the court of appeals and the district court analyzed the case under an improper analysis, the United States Supreme Court ultimately vacated and remanded the matter for reconsideration of that issue under the proper Fourth Amendment standard. *Id.*

3.23    Here, this Honorable Court should look to *Graham* and the *Graham* Factors when analyzing Appellee's claims of excessive force under 42 U.S.C. § 1983 in the case at bar.  The first *Graham* factor is the severity of the crime at issue.  Here, the suspected crime was really no crime at all - Appellee was a victim

---

[25] *Graham*, 490 U.S. at 395-97.

of a medical emergency.    ROA.651. This is why all criminal charges against Appellee were ultimately dismissed in their entirety.   ROA.740-43.   Appellee was traveling 5mph on an interstate that was shut down completely.   So even though Appellee would argue there was no crime at play, it was certainly not severe in any way, shape, or form.

3.24    The second *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others.   As aforementioned, Appellee was of absolutely no threat whatsoever to anybody.   In fact, Appellee was not even able to appreciate what was going on around him as he was suffering from a medical emergency and was dazed and confused by all of the excessive force around him. *See supra*, notes 3-6.   Instead of proffering medical aid and attention, Appellants nearly brutally murdered Appellee.

3.25    The third *Graham* factor is whether the suspect is actively resisting arrest or attempting to evade arrest by flight.   Appellee was not resisting arrest nor attempting to evade arrest by flight.   This is why multiple Appellants stated that Appellee was disoriented, dazed, and confused and why all criminal charges where dismissed in their entirety.    *See supra*, note 2; ROA.740-43, respectively.    The Harris County District Attorney's Office properly arrived at the conclusion that Appellee did not possess the requisite *mens rea* of "intentionally" to be properly convicted of felony evading in a motor vehicle due to his medical emergency. ROA.651.  As such, they properly dismissed all charges. ROA.740-43.

3.26    Here, in analyzing Appellee's claims of excessive force under *Graham's* "objective reasonableness" standard and in weighing the *Graham* Factors, this Honorable Court can only logically arrive at one conclusion - that Appellee was the victim of excessive force and police brutality under the Constitution. No reasonable officer from an objective standpoint would condone such evil, wicked, vile, deplorable, and abysmal conduct exemplified by Appellants. *See supra*, notes 3-6.

3.27    It is a miracle that Appellee has lived to tell his story. Appellee prays that this Honorable Court look to the *Graham* opinion to properly arrive at the conclusion that Appellee was the victim of excessive force by Appellants. Thus, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety. ROA.1232-33.

### iv.    *Barnes v. Felix*

3.28    This Honorable Court most recently analyzed the issues made the bases of this litigation on remand from the United States Supreme Court in its seminal *Barnes* opinion. *Barnes v. Felix*, 152 F.4th 669 (5th Cir. 2025). There, on the afternoon of April 28, 2016, Roberto Felix, Jr., (hereinafter "Defendant-Appellee"), a law enforcement officer patrolling a highway outside of Houston, Texas, received a radio alert about an automobile on the road with outstanding toll

violations. *Barnes v. Felix*, 605 U.S. 73, 76 (2025).    Defendant-Appellee soon spotted the car and initiated a traffic stop on the highway's shoulder. *Id*.

3.29    Parking his own car just behind, Defendant-Appellee walked to the driver's side door and asked the driver, Ashtian Barners (hereinafter "Decedent") for his license and proof of insurance. *Id*. at 77.  The Decedent replied that he did not have his license with him, and that the car was a rental in his girlfriend's name. *Id*.  All the while, the Decedent was rummaging through a pile of papers inside the vehicle, which caused Defendant-Appellee to tell the Decedent several times to stop "digging around." *Id*.

3.30    The Defendant-Appellee also commented that he smelled a strong odor of marijuana and asked the Decedent if there was anything in the car that he should know about. *Id*.  The Decedent responded that he might have some identification in the trunk. *Id*.  The Defendant-Appellee then told the Decedent to open the trunk from his seat. *Id*.  The Decedent did so, while also turning off the ignition. *Id*.  All that happened (as a dash cam recording of the incident shows) in less than two (2) minutes. *Id*.

3.31    Then things began moving even faster. *Id*.  With his right hand resting on his holster, the Defendant-Appellee told the Decedent to get out of the car. *Id*. The Decedent opened the door but did not exit; instead, he turned the ignition back on. *Id*.  The Defendant-Appellee unholstered his gun and, as the car began to move forward, jumped onto its doorsill. *Id*.  The Defendant-Appellee twice shouted at

the Decedent to not move. *Id*. With no visibility into the car, the Defendant-Appellee fired two (2) quick shots inside. *Id*.

3.32   The Defendant-Appellee then radioed for back-up. *Id*. By the time that the back-up arrived, the Decedent was dead. *Id*. About five (5) seconds elapsed between when the car started moving and when it stopped. *Id*. Within that period, two (2) seconds passed between the moment that the Defendant-Appellee stepped on the doorsill and the moment he fired his first shot. *Id*.

3.33   The Decedent's mother, Janice Barnes, (hereinafter "Plaintiff-Appellant"), sued under 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth Amendment. *Id*. The District Court granted Defendant's-Appellee's Motion for Summary Judgment and this Honorable Court affirmed. *Id*.; *Barnes v. Felix*, 91 F.4th 393 (5th Cir. 2024). This Honorable Court in its 2024 *Barnes* opinion reasoned that:

> The inquiry is confined to whether the officer was in danger at the moment of the threat that resulted in his use of deadly force. Any prior events leading up to the shooting, including actions the officer took, were simply not relevant. And here, as the District Court found, the precise moment of the threat was the two seconds when [Defendant-Appellee] was clinging to a moving car. Because [Defendant Appellee] could then have reasonably believed his life in danger, the panel concluded, his decision to shoot did not violate [Decedent's] Constitutional rights.[26]

---

[26] *Id*. at 78.; *Barnes*, 91 F.4th at 397-98.

3.34   The United States Supreme Court then granted certiorari to address whether, in resolving Fourth Amendment excessive-force claims, courts may apply the "Moment-of-Threat" rule just described.  *Id*.  The United States Supreme Court held that courts may not because that rule constricts the proper inquiry of weighing the totality of the circumstances.  *Id*.

3.35   The United States Supreme Court so reasoned that:

> A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 395.  The touchstone of the Fourth Amendment is reasonableness as measured in objective terms. *Brigham City v. Stuart*, 547 U.S. 398 (2006).  So the question in a case like this one, as this Court has often held, is whether the force deployed was justified from the perspective of a reasonable officer on the scene, taking due account of both the individual interests and the governmental interests at stake. *Graham*, 490 U.S. at 396; *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).[27]

> That inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." *Id.* at 427-28.; *Garner*, 471 U.S. at 9… For example, the "severity of the crime" [i.e., *Graham* Factor 1] prompting the stop can carry weight in the analysis. *Graham*, 490 U.S. at 396.; *Garner*, 471 U.S. at 11. So too can the actions of the officer took during the stop… *See id.*; *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). And the stopped person's conduct is always relevant because it indicates the nature and level of the threat he poses, either to the officer or to others [i.e., *Graham* Factors 2-3]. *See id.*; *Graham*, 490 U.S. at 396.[28]

---

[27] *Barnes*, 605 U.S. at 79.

[28] *Barnes*, 605 U.S. at 80.

Most notable here, the "totality of the circumstances" inquiry into a use of force has no time limit… Earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. Or as the Federal Government puts the point, those later, "in-the-moment" facts "cannot be hermetically sealed off from the context in which they arose." BRIEF FOR UNITED STATES AS *AMICUS CURIAE* 14… Prior events may show, for example… why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. Or instead, they may show why such an officer would have perceived the same conduct as innocuous *[emphasis added]*. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force.[29]

The Court's decision in *Plumhoff v. Rickard*, 572 U.S. 765 (2014), well illustrates the point. The excessive-force claim there concerned the fatal shooting of a driver at the end of a "dangerous car chase" lasting more than five minutes. *Id.* at 768. The driver had sped away from a traffic stop on a well-used road, and tried to outrun as many as six (6) police cruisers at speeds sometimes exceeding 100 miles per hour. Eventually the fleeing car ran into one of the cruisers and came "to a near standstill." *Id.* at 776. The driver, though, still tried to escape, pumping the gas in a way that sent his wheels "spinning" and then putting the car into reverse. *Id.* At that point, one of the officers fired several shots into the car. In a suit brought against the officer, the driver's daughter contended that those shots were taken when the chase was "already over." *Id.* at 777. But this Court rejected that claim based on everything that had happened during the incident - the driver's "outrageously reckless" behavior over the prior "five minutes," as well as his last-second efforts to again take flight. *Id.* at 776.

---

[29] *Barnes*, 605 U.S. at 80-81.

Given all of those events, the Court explained, a
reasonable officer would have concluded that the driver
was "intent on resuming" his getaway and, if allowed to
do so, would "again pose a deadly threat for others." *Id.*
at 777.    In short, the shooting was justified "at the
moment" it occurred partly because of what had
transpired in the preceding period. *Id.*[30]

3.36    The United States Supreme Court so reasoned that the "Moment-of-

Threat" rule "prevents that sort of attention to context, and thus conflicts with this

Court's instruction to analyze the totality of the circumstances." *Id.*    Additionally,

the Court so reasoned, "No rule that precludes consideration of prior events in

assessing a police shooting is reconcilable with the fact-dependent and context-

sensitive approach we have prescribed.    A court deciding a use-of-force case

cannot review the totality of the circumstances if it has put on chronological

blinders." *Id.* at 82.    The Court further reasoned, "a court cannot thus 'narrow' the

totality-of-the-circumstances inquiry, to focus on only a single moment.    It must

look too, in this and all excessive-force cases, at any relevant events coming

before." *Id.* at 83.    The United States Supreme Court then vacated and remanded

this matter back down to this Honorable Court. *Id.* at 84.

3.37    On remand, this Honorable Court first noted that, "it follows that the

choice to use deadly force… is presumptively reasonable when the officer has

reason to believe that the suspect poses a threat of serious harm to the officer or to

others." *Barnes*, 152 F.4th at 672; *Graham*, 490 U.S. at 396 [i.e., *Graham* Factors

---

[30] *Barnes*, 605 U.S. at 81.

2-3].   This Honorable Court took note that the United States Supreme Court,
particularly, Justice Kavanaugh, put great weight on whether a suspect was evading
or not.  *Id.* at 674.  Particularly, this Honorable Court noted that Justice Kavanaugh
reasoned that dangers to the public and police multiply when a driver flees.  *Id.*

    3.38   This Honorable Court so reasoned that:

> To establish a Fourth Amendment violation based on an
> officer's use of excessive force, plaintiffs "must show: 1)
> an injury; 2) which resulted from the use of force that
> was clearly excessive to the need and; 3) the
> excessiveness of which was objectively unreasonable.
> *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013).
> The court considers the totality of the circumstances: 1)
> the severity of the crime at issue [i.e., *Graham* Factor 1];
> 2) whether the suspect posed an immediate threat to the
> safety of officers or others [i.e., *Graham* Factor 2] and; 3)
> whether the suspect was actively resisting arrest or
> attempting to evade arrest by flight [i.e., *Graham* Factor
> 3]. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319,
> 332 (5th Cir. 2020) (citing *Graham*, 490 U.S. at 396).
> This is no cursory review; the court must "slosh its way
> through the fact bound morass of reasonableness,"
> careful to balance "the nature and quality of the intrusion
> on the individual's Fourth Amendment interests against
> the countervailing governmental interests at stake." *Scott
> v. Harris*, 550 U.S. 372, 383 (2007); *Graham*, 490 U.S. at
> 396.  But when an officer invokes qualified immunity, as
> here, the burden shifts to the plaintiff to first demonstrate:
> 1) the officer violated a Constitutional right and; 2) the
> unlawfulness of the officer's conduct was clearly
> established at the time.  *Dist. Of Columbia v. Wesby*, 583
> U.S. 48, 62-63 (2018).[31]

---

[31] *Barnes*, 152 F.4th at 674-75.

3.39   This Honorable Court ultimately affirmed its prior judgment which granted summary judgment in favor of Defendant-Appellee.   *Id.* at 677.   This Honorable Court echoed Justice Kavanaugh's great weight that he put on a suspect's flight.   *Id.* at 676.   This Honorable Court reasoned that, "All that a reasonable police officer could have concluded was that [Decedent] was intent on… flight, and that, if he [were] allowed to do so, he would… pose a deadly threat for others on the road." *Id.*; citing *Graham*, 490 U.S. at 396 [i.e., *Graham* Factors 2-3].

3.40   This Honorable Court feared that had Decedent's intent to flee been allowed by Defendant-Appellee, then this "could have started a perilous high-speed chase during rush hour on Houston's busiest toll road." *Id.*   In the end, this Honorable Court determined that Defendant-Appellee was indeed entitled to qualified immunity. *Id.* This Honorable Court weighed the totality of the circumstances from an objective standpoint and determined that Defendant's-Appellee's conduct was objectively reasonable in weighing the *Graham* Factors. *Id.*   This Honorable Court abandoned the "Moment-of-Threat" rule, and revered the Law of the Land.  *See id.*

3.41   Here, the facts in this case are distinguishable from *Barnes*. In *Barnes*, the Decedent was attempting to evade arrest, which Justice Kavanaugh and this Honorable Court so expressly loathed. Here, there was absolutely no intent from Appellee to flee nor evade in any manner.   Using common sense, any reasonable

officer from an objective standpoint would concede that an individual traveling 5mph is not attempting to evade.  This is why Appellee's criminal charges were dismissed in their entirety.  ROA.740-43.

3.42   Additionally, Interstate-10 was completely shut down in the case at bar, unlike the Sam Houston Tollway in *Barnes*. Had the Decedent been allowed to flee in *Barnes*, he most likely would have severely injured and/or killed numerous innocent drivers.   This is exactly the sort of conduct that entitles officers to qualified immunity pursuant to the *Graham* Factors.   Here, however, with Interstate-10 being shut down, Appellee posed no threat to other drivers on the road on the day of the incidents made the bases of this litigation.

3.43   In *Barnes*, the Decedent was exhibiting odd behaviors and rummaging through papers.  Here, multiple Appellants admitted that Appellee was dazed and confused and was not fighting back nor resisting arrest in any manner.  *See supra*, note 2.  Nevertheless, Appellants proceeded to nearly murder Appellee.  *See supra*, notes 3-6.  Here, Appellee was obviously not in his right mind as he was suffering from a medical emergency.  ROA.651.

3.44   Here, Appellee needed medical attention, not police brutality.   *See supra*, notes 3-6. In *Barnes*, the Decedent smelled of marijuana and was under the influence.   Here, Appellee was completely sober and there was no alcohol nor illicit drugs in Appellee's system *[emphasis added]*.   ROA.284; 294, respectively. Finally, here, Appellee did not have any weapons whatsoever that could have

harmed Appellants.   As such, the case at bar is distinguishable from *Barnes* in many different ways.

3.45   In abandoning the "Moment-of-Threat" rule, Appellants cannot argue that "hindsight is 20/20" nor that they were "faced with a split-second situation." The United States Supreme Court has made clear that those sorts of excuses will no longer be tolerated.  *See generally Barnes*, 605 U.S. 76-90.   This Honorable Court must not look to any "split-second" arguments proffered by Appellants, as those excuses are no longer justified by the Law of the Land.

3.46   This Honorable Court must look to the totality of the circumstances (i.e., from the very beginning to the end of the encounter with Appellee, temporally) and view the actions of Appellants from an objective standpoint of reasonableness in utilizing the *Graham* Factors as their guide and aid.   Common sense will tell this Honorable Court that what happened on the day of the incidents made the bases of this litigation was simply wrong and immoral.

3.47   This case is known all over the United States of America at this point, and can set a dangerous precedent that condones police brutality if this Honorable Court allows Appellants to escape the realms of justice.   Police brutality has no place in history and especially has no place in modern society.   It is obsolete and archaic.   As such, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.   ROA.1232-33.

### v.    *Ayers v. Hilliard*

3.48    This Honorable Court also analyzed the issues made the bases of this litigation in its seminal *Ayers* opinion.    *Ayers v. Hilliard*, 172 F.3d 867 (5th Cir. 1999).    There, a Texas state prisoner (hereinafter "Plaintiff-Appellant") filed a lawsuit against the Texas Department of Criminal Justice and various correctional officers (hereinafter "Defendants-Appellees") alleging excessive force.    *Id.* at *1. Plaintiff-Appellant alleged that Defendants-Appellees attacked him without provocation, handcuffed him, and tried to force him to walk away from his unit and into a field.    *Id.*

3.49    When Plaintiff-Appellant refused, Defendants-Appellees hit him in the head four (4) times and forced his face into the ground.    *Id.*    Then when Plaintiff-Appellant continued to refuse to walk farther into the field, Defendants-Appellees hit him in the face and head approximately eight (8) times, tried to choke him, kicked him, made racially insulting statements, and threatened to kill him.    *Id.*    Defendants-Appellees of course moved for a 12(b)(6) dismissal which was granted.    *Id.*

3.50    This Honorable Court reasoned on appeal that:

> In the case before us, the factual allegations in [Plaintiff's-Appellant's] pleadings, taken alone, suggest that the force used by [Defendants-Appellees] was excessive… The abuse directed at [Plaintiff-Appellant] is arguably of a sort "repugnant to the conscience of mankind" necessary to find… uses of force

37

unconstitutional. *See Hudson v. McMillian*, 503 U.S. 1 (1992).[32]

3.51   This Honorable Court ultimately vacated and remanded the 12(b)(6) dismissal. *Id.* at *3. Here, the way that Appellee was nearly brutally murdered in unison by Appellants is also "repugnant to the conscience of mankind." *Id.* at *2. This Honorable Court should look to its wisdom as set forth in its seminal *Ayers* opinion in order to arrive at the conclusion that Appellee was the victim of excessive force under 42 U.S.C. § 1983. As such, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety. ROA.1232-33.

### vi.   *Greene v. DeMoss*

3.52   This Honorable Court once again analyzed the issues made the bases of this litigation in its seminal *Greene* opinion. *Greene v. DeMoss*, No. 21-30044, 2022 WL 3716201 (5th Cir. 2022). There, Ronald Green (hereinafter "Decedent"), was driving on U.S. Highway 80 in Monroe, Louisiana around 12:00am on May 10, 2019. *Id*. at *1. Trooper Dakota DeMoss (hereinafter "Defendants-Appellants"),[33] attempted to stop Decedent for an unspecified violation. *Id*. Decedent sped away and a pursuit ensued. *Id*. Decedent eventually crashed into a

---

[32] *Ayers*, 172 F.3d at *2.

[33] This case involves Trooper DeMoss and various other law enforcement officials, all of which were sued on claims of excessive force and bystander liability under 42 U.S.C. § 1983. As such, "Defendants-Appellants" refers to each of them singularly, collectively, or in combination with others.

wooded area and he was left uninjured. *Id*. Several additional law enforcement officials (included in "Defendants-Appellants"), imminently arrived on scene. *Id*.

3.53   Decedent exited his vehicle and began vehemently apologizing. *Id*. Decedent was pinned to the ground by Defendants-Appellants. *Id*. Subsequently, Decedent was beaten, smothered, choked, and tased at least three (3) times. *Id*. Decedent was left beaten, bloodied, and in cardiac arrest. *Id*.

3.54   During this police brutality, Decedent was begging the Defendants-Appellants to stop. *Id*. Decedent never resisted, posed no threat, apologized repeatedly, and immediately surrendered upon exiting his vehicle. *Id*. Nevertheless, Defendants-Appellants (comprised of at least seven [7] law enforcement officials) engaged in the aforementioned excessive force in unison. *Id*. At 12:29am, one of the Defendants-Appellants called for an ambulance. *Id*. When the ambulance arrived at 12:51am, Decedent was covered in blood with multiple taser barbs attached to his body. *Id*. The paramedics transported Decedent to the hospital where he was pronounced dead. *Id*. The autopsy revealed that Decedent's cause of death was cardiac arrest and he was also diagnosed with an unspecified head injury. *Id*. The autopsy further revealed signs of trauma including blunt-force injuries to the head and face, together with facial lacerations, abrasions, and contusions. *Id*.

3.55   The Decedent's daughter filed a lawsuit against the seven (7) Defendants-Appellants for excessive force and bystander liability under 42 U.S.C.

§ 1983.[34]  The Decedent's daughter also asserted Louisiana state law claims against the officers for battery.  *Id*.  The Defendants-Appellants of course moved for a 12(b)(6) dismissal based on qualified immunity.  *Id*.  The District Court denied the Defendants'-Appellants' Motions to Dismiss.  *Id*.

3.56  The District Court concluded that "qualified immunity is inappropriate because every reasonable officer would have known that he could not beat, smother, and choke an unresisting suspect who was subdued and posing no threat."[35]  *Id*. at *2.  The District Court allowed the state law claims to survive dismissal as well.  *Id*.  The Defendants-Appellants of course appealed.  *Id*.

3.57  This Honorable Court reasoned that:

> Excessive force claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment… against unreasonable seizure. *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021).  Plaintiffs must show: 1) an injury; 2) which resulted directly and only from a use of force that was clearly excessive and; 3) the excessiveness of which was clearly unreasonable.  *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Poole*, 691 F.3d at 628).  Reasonableness "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee*, 471 U.S. at 8).  It is "long…

---

[34] The bystander liability analysis from the *Greene* opinion under 42 U.S.C. § 1983 will be discussed *infra*, Section B.

[35] The District Court similarly denied qualified immunity on the bystander claims because "every reasonable officer would have understood that he could not stand by while other officers engaged in excessive force."  *Id*.; *see infra*, Section B.

established" in this circuit that "officers engage in excessive force when they physically strike a suspect who is not resisting arrest *[emphasis added]*." *Joseph ex rel. Estate of Joseph*, 981 F.3d at 342.[36]

Qualified immunity...[requires] a two-step inquiry: 1) first we ask whether there was a statutory or Constitutional violation based on the alleged facts and; 2) second, we ask if the defendant's actions violated clearly established law that every reasonable person would have known. *Tucker*, 998 F.3d at 172... Qualified immunity does not heighten the Rule 8 pleading standard. *Arnold*, 979 F.3d at 267 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018).[37]

3.58  This Honorable Court affirmed the judgment of the District Court which denied dismissal based on qualified immunity. *Id*. at *5. This Honorable Court reasoned that excessive force was clearly established because Decedent was pinned down, begging officers to stop, apologizing repeatedly, and nevertheless fell victim to police brutality. *Id*. at *4.

3.59  Here, similarly to *Greene*, Appellee is on video screaming, "God, please help me!" Here, Appellee was crying out for help, on camera, while Appellants were ruthlessly engaging in excessive force. *See supra*, notes 3-6. Like the Decedent in *Greene*, Appellee here was not resisting in any way and posed no threat. *See supra*, note 2. Unlike the Decedent in *Greene*, however, Appellee was not attempting to evade arrest in any manner and this is why his criminal

---

[36] *Greene*, No. 21-30044, 2022 WL 3716201 at *3.

[37] *Greene*, No. 21-30044, 2022 WL 3716201 at *2.

charges were dismissed in their entirety.   ROA.740-43.   As such, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety. ROA.1232-33.

### vii.    Austin v. City of Pasadena, Texas

3.60   This Honorable Court also analyzed the issues made the bases of this litigation in its seminal *Austin* opinion.  *Austin v. City of Pasadena, Texas*, 74 F.4th 312 (5th Cir. 2023). There, at 2:33am on March 28, 2019, multiple Pasadena Police Department Officers (hereinafter "Defendants-Appellees) arrested 32-year-old Jamal Ali Shaw (hereinafter "Decedent") for suspicion of public intoxication.  *Id*. at 319.   Decedent was thereafter booked into jail.   *Id*.   At 6:07am, Decedent was placed into a detention cell without incident.   *Id*.

3.61   A video recording shows that around 6:15am, Decedent fell to the floor due to an epileptic seizure. *Id*.  Other detainees in the same cell as Decedent alerted the jail staff that Decedent was having a seizure.  *Id*.  At 6:17am, Decedent was seen making up and down movements with his head, convulsing, and foaming at the mouth.  *Id*.  At 6:21am, Defendants-Appellees attempted to pin and straddle Decedent.  *Id*. at 320.   Defendants-Appellees then tased Decedent several times between 6:21am to 6:22am.  *Id*.

3.62   Decedent was then tased a few more times at 6:22:48am.  *Id*.   At 6:23am, Decedent was dragged on the floor by Defendants-Appellees. *Id*.

Decedent was then tased more as he kicked his legs. *Id*. At 6:23am, the ambulance arrived. *Id*. At 6:24:40am, Defendants-Appellees pressed their knees into Decedent's back, holding him down on the floor. *Id*. At 6:26:10am, two (2) Emergency Medical Technician's ("EMTs") arrived at the cell with a gurney, but were denied entry and waited outside of the cell. *Id*.

3.63   At 6:26:30am, Decedent was handcuffed behind his back. *Id*. The Defendants-Appellees then held Decedent down while another staff member went to retrieve a restraint chair at 6:27:27am. *Id*. A few seconds later, Decedent was lifted by his shoulders and was stood up in order to walk Decedent to the door, however, Decedent collapsed. *Id*. At this time, an EMT asked Defendants-Appellees if they wanted to place Decedent on the stretcher, but the Defendants-Appellees declined. *Id*. Approximately two (2) minutes passed when the EMTs first asked to help until they were allowed to do so. *Id*.

3.64   The EMTs then administered two (2) injections to calm Decedent's behavior at 6:36am and 6:44am, respectively. *Id*. Decedent remained in the restraint chair for approximately seventeen (17) minutes, until 6:47am. *Id*. While in the restraint chair, Decedent yelled, called for his mother, and cried, "Help me!" *Id*. Decedent was placed in the ambulance and as it began to leave the jail at 6:57am, Decedent suffered cardiac arrest and died the next day due to cardiopulmonary arrest. *Id*.

3.65   The administrator of Decedent's estate filed a lawsuit alleging: 1) excessive force; 2) bystander liability and; 3) improper/delayed medical treatment under 42 U.S.C. § 1983.[38]   *Id*. at 320-21.   The Defendants-Appellees of course moved for a 12(b)(6) dismissal based on qualified immunity. *Id*.

3.66   This Honorable Court so reasoned that:

> Force…is 'excessive…' when the force is objectively unreasonable." *Id*. at 322.; citing *Kingsley*, 576 U.S. at 396-97. Courts weigh the following factors to determine reasonableness: 1) the relationship between the need for the use of force and the amount of force used; 2) the extent of the plaintiff's injury; 3) any effort made by the officer to temper or to limit the amount of force; 4) the severity of the security problem at issue; 5) the threat reasonably perceived by the officer and; 6) whether the plaintiff was actively resisting. *Id*. at 397.[39]

---

[38] Appellee pled improper/delayed medical treatment in his Original Complaint.  ROA.51-52. However, Appellants have failed to raise this issue in their Brief.  As such, this issue will not be discussed. It is worth noting, however, that in *Austin*, the Plaintiffs-Appellants survived dismissal on their improper/delayed medical treatment cause of action. This Honorable Court reasoned that, "The Due Process Clause of the Fourteenth Amendment guarantees [individuals] the right not to have their serious medical needs met with deliberate indifference on the part of the confining officials… An officer acts with deliberate indifference to an [individual's] serious medical needs if the officer refuses to treat him, ignores his complaints, intentionally treats him incorrectly, or engages in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. at 327-28; citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001); *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022).  Here, several hours went by before Appellee received medical attention even though he had a medical emergency, thus, exemplifying deliberate indifference. ROA.651. As such, Appellee prays that his cause of action for improper/delayed medical treatment survive dismissal in its entirety.  *See infra*, Section B, for a discussion on bystander liability under 42 U.S.C. § 1983.

[39] *Austin*, 74 F.4th at 322.

3.67   This Honorable Court then looked to its seminal *Timpa* opinion to aid its analysis.   *Id*. at 323-24; *see Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021).[40] This Honorable Court found that just as in *Timpa*, the Defendants-Appellees were responding to a medical emergency, not to any purported disturbance or danger to others.   *Id*. at 324.   Additionally, the Decedent was not actively resisting and the Defendants-Appellees were aware of this.   *Id*.   Additionally, an autopsy revealed that the Decedent was completely sober and this Honorable Court reasoned that just as in *Timpa*, a jury could find that reasonable officers in Defendants'-Appellees' position would not have believed that Decedent needed to be restrained as if he were actively resisting. *Id*.

3.68   This Honorable Court found that the security threat was low and practically nonexistent.   *Id*. at 325.   This Honorable Court also found that nothing prevented the Defendants-Appellees from de-escalating the situation prior to engaging in such excessive force.   *Id*.   This Honorable Court found that "a jury could conclude that the force employed was disproportionate to the need and that the [Defendants-Appellees] engaged in excessive force at various periods once they entered [Decedent's] cell." *Id*.

---

[40] *See Timpa*, 20 F.4th at 1025-36 (where this Honorable Court reversed a grant of qualified immunity to officers who held a man experiencing a mental health episode in a prone position for nearly fifteen (15) minutes. *Timpa* involved officers responding to a medical emergency, which this Honorable Court emphasized only "sharpened the excessiveness" of the use of force in light of precedents involving arrestees "suspected of serious crimes.").

3.69    This Honorable Court then noted that, "We have placed great weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Id*. at 326.; citing *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). This Honorable Court then reasoned:

> In the excessive force context, a Constitutional violation is clearly established, [i.e., Prong 2 of qualified immunity analysis], if no reasonable officer could believe the act was lawful. *Darden v. City of Ft. Worth*, 880 F.3d 722, 727 (5th Cir. 2018). We recently held that in this circuit, "the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." *Timpa*, 20 F.4th at 1034… For instance…if the suspect lacks any means of evading custody - for example,  by being pinned to the ground by multiple officers - force is not justified. *Joseph*, 981 F.3d at 335…In *Darden*, we held that "A Constitutional violation occurs when an officer tases, strikes, or violently slams" a suspect who "is not actively resisting." *Darden*, 880 F.3d at 731. In that case, we reversed the grant of qualified immunity to officers who physically restrained and repeatedly tased a man they suspected of dealing cocaine. *Id.* at 725-26. In addition to *Darden*, we have reversed the grant of qualified immunity to officers in several other cases involving excessive force. *See, e.g.*, *Ramirez*, 716 F.3d 379; *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012); *Anderson v. McCaleb*, 480 F.App'x 768, 773 (5th Cir. 2012); *Massey v. Wharton*, 477 F.App'x 256, 263 (5th Cir. 2012); *Autin v. City of Baytown*, 174 F.App'x 183, 186 (5th Cir. 2005). These cases clearly establish the alleged unreasonableness of the [Defendants'-Appellees'] continued tasing and use of force to restrain [Decedent] after he was subdued and restrained and when he was not actively resisting due to a medical emergency ***[emphasis added]***… Because at the time of this incident it was clearly established that the continued use of

> force… against a restrained and subdued subject who was not actively resisting due to a medical emergency violates [the Constitution], the [Defendants-Appellees] are not entitled to qualified immunity.[41]

3.70 Here, just like in *Austin*, Appellee was suffering from a medical emergency.  ROA.651.  Appellee was not actively resisting, nor was he a threat to anybody.  *See supra*, note 2.  There was no negotiation nor attempts to de-escalate the situation, the situation went straight to police brutality at its finest and the force employed was disproportionate to the need.  *See supra*, notes 3-6.  Additionally, here, Appellee like the Decedent in *Austin*, was sober. ROA.284; 294, respectively.  As such, this Honorable Court should look to its *Austin* opinion and affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.  ROA.1232-33.

**B.    Appellants are liable via Bystander Liability and/or Failure to Intervene under 42 U.S.C. § 1983 and Appellants are not entitled to qualified immunity.**

### i.    *Greene v. DeMoss*

3.71 This Honorable Court additionally denied Defendants'-Appellants' Motions to Dismiss via qualified immunity as to bystander liability under 42 U.S.C. § 1983.[42]  *Greene*, No. 21-30044, 2022 WL 3716201 at *4-5.    This Honorable Court so reasoned:

---

[41] *Austin*, 74 F.4th at 326-327.

[42] The facts of *Greene v. DeMoss* are discussed in great detail, *supra*, paragraphs 3.52-3.59.

"An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983." *Carroll*, 800 F.3d at 177 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The elements of a successful bystander liability claim require that an officer: "1) knew a fellow officer was violating an individual's Constitutional rights; 2) was present at the scene of the Constitutional violation; 3) had a reasonable opportunity to prevent the harm but nevertheless; 4) chose not to act." *Joseph ex rel. Estate of Joseph*, 981 F.3d at 343. Bystander liability requires more than mere presence in the vicinity of the violation; '[courts] also consider whether an officer "acquiesced in" the alleged Constitutional violation.'" *Id.* (quoting *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013)… In May 2019 the law was "clearly established… that an officer [can] be liable as a bystander in a case involving excessive force if he knew a Constitutional violation was taking place and had a reasonable opportunity to prevent the harm." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).[43]

3.72    This Honorable Court then so reasoned:

Based on the alleged facts that we must take as true, we conclude that any reasonable officer would have known that his failure to intervene over a period of almost thirty (30) minutes or more while his fellow officers beat an unresisting suspect offends the Constitution. Drawing all inferences in [Plaintiff's-Appellee's] favor… Under the first element, all likely knew that a fellow officer was violating [Decedent's] Constitutional rights. Indeed, with each officer's personal participation in the excessive force, it is reasonable to infer that they each knew about the others' unconstitutional conduct. Second, [Plaintiff-Appellee] pleaded that each officer was present at the scene of the beating. Third, because the beating occurred over an alleged span of twenty-nine (29) to fifty-one (51)

---

[43] *Greene*, No. 21-30044, 2022 WL 3716201 at *4.

> minutes, it is also reasonable to infer that each officer had
> an opportunity to intervene during that window.  Fourth,
> [Plaintiff-Appellee] alleges that each officer "watched"
> as the other officers used excessive force, again
> reasonably permitting an inference that they chose not to
> act.[44]

3.73    In the end, this Honorable Court held that Plaintiff's-Appellee's

bystander liability claims under 42 U.S.C. § 1983 survived in their entirety.  *Id*. at

*5.  Additionally, Plaintiff's-Appellee's state law claims survived dismissal in their

entirety.    *Id*.    Here, this Honorable Court should look to its seminal *Greene*

opinion, and arrive at the same conclusion that Appellee's claims for bystander

liability under 42 U.S.C. § 1983 should survive in their entirety.

3.74    Here, Appellants knew that fellow deputies were violating Appellee's

Constitutional rights.    Instead of proffering medical attention, Appellants shot

Appellee with rubber bullets, ripped him to shreds with German Shepherds,

deployed tear gas, and punched him repeatedly in unison in the back of the skull

until the point of unconsciousness while another deputy was holding Appellee

down. *See supra*, notes 3-6.

3.75    Appellants were present during all of this, and acquiesced in said

Constitutional deprivations. Instead of stopping such evil conduct, Appellants

stood back and enjoyed the show.    In *Greene*, officers stood by and watched the

Constitutional deprivations for around twenty-nine (29) to fifty-one (51) minutes.

---

[44] *Id*. at *4.

Here, Appellants stood by for hours while Appellee was almost nearly murdered.

3.76  Here, Appellants had much for time to intervene than the Defendants-Appellants did in *Greene*. This is the class paradigm of failure to intervene and bystander liability under 42 U.S.C. § 1983 that this Honorable Court has so expressly loathed in the past.  As such, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.  ROA.1232-33.

### ii. *Austin v. City of Pasadena, Texas*

3.77  This Honorable Court also additionally denied Defendants'-Appellees' Motions to Dismiss via qualified immunity as to bystander liability under 42 U.S.C. § 1983 in *Austin*.[45]  *Austin*, 74 F.4th at 331.  This Honorable Court echoed the same four (4) elements of bystander liability that the *Green* and *Joseph* Courts did. *Id.*; s*ee supra*, paragraph 3.71.  This Honorable Court reasoned that because Defendants-Appellees stood idle during the incidents of excessive force, then they are also liable for bystander liability under 42 U.S.C. § 1983. *Id.*; citing *Whitley*, 726 F.3d at 646-47.

3.78  Here, Appellants stood back and enjoyed the show as Appellee was almost nearly brutally murdered.  Appellee needed help, not police brutality.  As such, Appellee prays that this Honorable Court affirm the judgment of the District

---

[45] The facts of *Austin v. City of Pasadena, Texas*, are discussed in great detail, *supra*, paragraphs 3.60-3.70.

Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.  ROA.1232-33.

## IV.  CONCLUSION

4.1     What happened in this case exudes the horrors of what can happen when people believe that they are above the law.   The undersigned Counsel possesses video footage of these extremely shocking and evil events.   Throughout the footage, Appellants are having a blast. The Appellants are shooting at Appellee, throwing tear gas at him, punching him, kicking him, and ripping him to shreds with their German Shepherds. In short, it was "open-season."   Appellee in these videos is scared, alone, disoriented, suffering from a medical emergency, confused, and is screaming for help.  What happened here is disturbing.

4.2     This will be a landmark case that has already received national media attention and will continue to do so.   Appellee is not naive enough to assert that this case will end police brutality, however, Appellee sure hopes to make a difference.   Appellee hopes that this case will give a voice to the millions of victims of police brutality in American history who were oftentimes left unheard.

## V.  PRAYER

5.1     As such, Appellee prays that this Honorable Court affirm the judgment of the District Court that denied Appellants' Motions to Dismiss based on qualified immunity in their entirety.  ROA.1232-33.

*[Signature Block on Next Page]*

Respectfully submitted,

**LAW OFFICES OF GARRETT GIBBINS, PLLC**

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Texas Bar Number: 24125243
South Carolina Bar Number: 105706
New Mexico Bar Number: 163276
Arizona Bar Number: 039804
Colorado Bar Number: 61100
Oklahoma Bar Number: 36371
Illinois Bar Number:  6351087
Tennessee Licensure Pending
Federal ID: 3864602
728 West Donovan Street
Houston, Texas 77091
Email: garrettgibbins4747@yahoo.com
Phone: 512-587-8572
*Counsel for Plaintiff - Appellee:*
*Trinidad Cutshall*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2025, pursuant to the FED. R. APP. P. 25, a true copy of Appellee's Brief was duly served upon each party to this cause as set forth below on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins


Via E-File

**LAW OFFICES OF RICHARD KUNIANSKY**

Richard Kunianksy
State Bar No. 11762640
440 Louisiana, Suite 1440
Houston, Texas 77002
Telephone: (713) 622-8333
Email: rkuniansky@gmail.com
*Counsel for Defendants-Appellants*
*Donald Dillow, Nahuel Faiura,*
*Todd Klosterman, and N. Poirier*

**&**

**DAVID ADLER, P.C.**

David Adler
State Bar No. 00923150
1415 North Loop West
Suite 905
Houston, Texas 77008
Telephone: (713) 666-7576
Email: davidadler1@hotmail.com
*Counsel for Defendants-Appellants*
*C. Marshall, R.W. Holley,*
*D.R. Calhoun, M.A. Carrizales,*
*and P. Batton*

53

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to FED. R. APP. P. 32(g) and 5TH CIR. R. 32.3, Appellees Brief contains 12,990 words and is 14-point font for text and 12-point font for footnotes.  Appellee's Brief is double spaced.

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins